**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RICHARD M. WULF, JR., as an
individual and as a representative of the
classes,

       Plaintiff,

v.

BANK OF AMERICA, N.A., and BAC
HOME LOANS SERVICING, L.P.,

       Defendants.

Case No.:  2:10-cv-05176-MAM

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice


CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES

December 30, 2010

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

    I.   Flood Insurance Requirements Upon Loan Origination .......................... 2

    II.  Bank of America Falsely Claims that Plaintiff's Flood Insurance Is "Not Adequate" Ten Months After Assuming the Mortgage .............................. 4

    III. Bank of America Force-Places Unnecessary and Excessive Flood Insurance ............. 5

    IV. Plaintiff's Claims ..................................................................................... 6

STANDARD OF REVIEW .......................................................................................... 7

ARGUMENT ............................................................................................................... 7

    I.   Bank of America Had No Basis for Asserting that Plaintiff's Flood Insurance Coverage Was "Not Adequate" ............................................... 7

        A. Federal Law Does Not Require Flood Insurance In Excess of a Borrower's Principal Balance ............................................................ 8

        B. Plaintiff's Mortgage Documents Do Not Require Flood Insurance In Excess of His Principal Balance ................................................... 9

            1. The Flood Insurance Notice that Plaintiff Signed at Closing Did Not Require Coverage In Excess of His Principal Balance ............ 9

            2. The Flood Insurance Provision in Paragraph 4 of the Mortgage Did Not Require Coverage In Excess of Plaintiff's Principal Balance ........ 10

            3. The *Hazard* Insurance Provision in the Mortgage Did Not Require Plaintiff to Obtain Additional *Flood* Insurance ........................ 11

    II.  Plaintiff Has Stated a Valid TILA Claim Against Bank of America ............ 12

        A. Bank of America Violated 12 C.F.R. § 226.17(c) by Misrepresenting the Terms of the Legal Obligation Between the Parties ...................... 13

B.  Bank of America Violated 12 C.F.R. § 226.18 by Failing to Provide Plaintiff with New Credit Disclosures ........................................................................ 16

C.  Plaintiff's TILA Claim Is Timely ........................................................ 18

III.   Plaintiff Has Asserted Valid Claims for Fraud and Violation of the UTPCPL .... 19

A.  Plaintiff's Statutory and Tort Claims Are Adequately Pled ........................ 20

1. Violation of the UTPCPL ................................................................ 20

2. Common Law Fraud ...................................................................... 21

B.  Plaintiff's Statutory and Tort Claims Are Not Barred by the Economic Loss Doctrine ........................................................................................ 23

1. *Werwinski* Is Inapplicable to the Present Case ...................................... 24

2. Numerous Courts Have Declined to Follow *Werwinski* ...................... 24

3. Plaintiff's UTPCPL and Fraud Claims Fall within the Exception to the Economic Loss Doctrine Recognized by *Werwinski* ........................ 26

IV.   Plaintiff Also Has Stated Valid Contract-Based Claims ............................ 28

CONCLUSION ................................................................................... 31

# TABLE OF AUTHORITIES

**STATUTES**

15 U.S.C. § 1601(a) ............................................................................................... 12, 16

15 U.S.C. § 1638 ...................................................................................................... 13

15 U.S.C. § 1639 ...................................................................................................... 13

42 U.S.C. § 4012a ...................................................................................................... 8

42 U.S.C. § 4012a(b)(1) ....................................................................................... 5, 8, 9

42 U.S.C. § 4012a(e)(1)–(2) ....................................................................................... 9

73 Pa. Stat. Ann. § 201-2(4) ..................................................................................... 20

73 Pa. Stat. Ann. § 201-2(4) (xxi) ............................................................................ 20


**REGULATIONS & RULES**

12 C.F.R. § 22.3 ......................................................................................................... 8

12 C.F.R. § 226.5(c) ................................................................................................. 15

12 C.F.R. § 226.17(c) ........................................................................................... 13, 15

12 C.F.R. § 226.17(e) ........................................................................................... 15, 16

12 C.F.R. § 226.18 ............................................................................................... 13, 17

12 C.F.R. § 226.20 ................................................................................................... 13

12 C.F.R. § 226.20(a) ........................................................................................... 16, 17

12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1 ............................................................ 16, 17

22 C.F.R.§ 203.16a(c) ............................................................................................. 3, 10

74 Fed. Reg. 35914, 35936 (July 21, 2009) .............................................................. 28

Fed. R. Civ. P. 8(a)(2) ................................................................................................ 7

Fed. R. Civ. P. 9(b) ................................................................................................... 22


**CASES**                                                                                Page(s)

*Air Prods. Chems., Inc. v. Easton Metal Prods. Co.,* 256 F. Supp. 2d 329 (E.D. Pa. 2003) ........ 26

*Andrews v. Stiffler,* 9 Pa. D & C 5th 334 (Pa. Comm. Pl. July 9, 2009) ........................ 20, 23, 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................ 7

*Becker v. Chicago Title Ins. Co.,* 2004 WL 228672 (E.D. Pa. Feb. 4, 2004) ...................... 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 7

*Bermudez v. First of Am. Bank Champion, N.A.,* 860 F. Supp. 580 (N.D. Ill. 1994) .................. 17

*Birchall v. Countrywide Home Loans, Inc.,* 2009 WL 3822201 (E.D. Pa. Nov. 12, 2009) ......... 21

*Bohler-Uddeholm Amer., Inc. v. Ellwood Grp., Inc.,* 247 F.3d 79 (3d Cir. 2001) ............... 24, 28

*Chiles v. Ameriquest Mort. Co,* 551 F. Supp. 2d 393 (E.D. Pa. 2008) ..................... 20

*Clark v. EMC Mortg. Co.,* 2009 WL 229761 (E.D. Pa. Jan. 29, 2009) ..................... 25

*CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053 (Pa. Super. Ct. 1999) ..................... 29

*Davis v. Allstate Ins. Co.,* 2009 WL 122761 (E.D. La. 2009) ..................... 11

*Demando v. Morris,* 206 F.3d 1300 (9th Cir. 2000) ..................... 13

*Donahue v. Fed. Exp. Corp.,* 753 A.2d 238 (Pa. Super. Ct. 2000) ..................... 29

*East River SS. Corp v. Transamerica Delaval, Inc.,* 476 U.S. 858 (1986) ..................... 24

*EP Medsystems, Inc. v. EchoCath, Inc.,* 235 F.3d 865 (3d Cir. 2000) ..................... 23

*Etoll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d 10 (Pa. Super. Ct. 2008) ..................... 28

*Excelsior Ins. Co. v. Incredibly Edible Delites,* 2009 WL 5092613 (E.D. Pa. Dec 17, 2009) ..................... 30

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009) ..................... 7

*Frey v. Grumbine's RV,* 2010 WL 4718750 (M.D. Pa. Nov. 15, 2010 ..................... 30

*Glover v. Bally Total Fitness Corp.,* 2007 WL 465578 (M.D. Pa. Feb. 9, 2007) ..................... 22

*Goldman v. First Nat'l Bank,* 532 F.2d 10 (7th Cir. 1976) ..................... 19

*Greater Philadelphia Health Servs. II Corp. v. Complete Care Servs., L.P.,* 2000 WL 33711052 (Pa. Ct. Comm. Pl. Nov. 20, 2000) ..................... 27

*Hofstetter v. Chase Home Fin., LLC,* 2010 WL 3259773 (N.D. Cal. Aug. 16, 2010) ........... 18, 22

*Hofstetter v. Chase Home Fin., LLC,* 2010 WL 4606478 (N.D. Cal. Oct. 29, 2010) ......... passim

*Hollander v. Etymotic Research, Inc.,* 2010 WL 2813015 (E.D. Pa. July 14, 2010) ..................... 22

*Hubbard v. Fidelity Fed. Bank,* 91 F.3d 75 (9th Cir. 1996) ..................... 13

*In re Comm. Bank of Northern Virginia,* 622 F.3d 275 (3d Cir. 2010) ..................... 19

*In re Fowler,* 425 B.R. 157 (Bkrtcy. E.D. Pa. 2010) ..................... 25

*In re Katrina Canal Breaches Litig.,* 495 F. 3d 191 (5th Cir. 2007) ..................... 11

*In re Smith,* 866 F.2d 576 (3d Cir. 1989) ..................... 24, 29

*Lawn v. Enhanced Serv. Billing, Inc.,* 2010 WL 2773377 (E.D. Pa. July 13, 2010) ..................... 20

*McElwee Group, LLC v. Mun. Auth. Of Borough of Elverson,* 476 F. Supp. 2d 472 (E.D. Pa. 2007) ..................... 25

*Motley v. Homecomings Financial, LLC,* 557 F. Supp. 2d 1005 (D. Minn. 2008) ..................... 17

*Norris v. Union Planters Bank,* 739 So.2d 869 (La. 1st Cir. Ct. App. 1999) ..................... 8, 9

*Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78 (3d Cir. 2000) ..........................30

*NutriSystem, Inc. v. Nat'l Fire Ins. Of Hartford*, 2004 WL 2646598 (E.D. Pa. Nov. 19, 2004) ...................................................................................................................26, 27, 28

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ....................25, 26

*Oppenheimer v. York Int'l*, 2002 WL 31409949 (Pa. Com. Pl. Oct. 25, 2002) ...............25

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) .............................................7

*Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir. 1998) ...............................19

*Roberts v. Fleet Bank, N.A.*, 342 F.3d 260 (3d Cir. 2003) ............................................13

*Rossman v. Fleet Bank, N.A.*, 280 F.3d 384 (3d Cir. 2002) ...........................................13

*Samuel-Bassett v. Kia Motors America, Inc.*,357 F.3d 392 (3d Cir. 2004) ....................25

*Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415 (3d Cir. 1999) ..............9, 10

*Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546 (M.D. Pa. 2010) ..........................25

*Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451 (E.D. Pa. 2009) ..................20, 21

*Seward v. Certo*, 2006 WL 266150 (E.D. Pa. Feb. 2, 2006) ...........................................25

*Smith v. John Hancock Inc. Co.*, 2008 WL 4072585 (E.D. Pa. Sept. 2, 2008) ...........25, 26, 27

*Smith v. Reinhart Ford*, 68 Pa. D & C 4th 432 (Pa. Ct. Comm. Pl. Sept. 29, 2004) .........23, 25, 27

*Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) .....................................29

*Temple Univ. Hosp., Inc. v. Group Health, Inc.*, 2006 WL 146246 (E.D. Pa. Jan. 12, 2006) .....................................................................................................................29

*Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995) ........................16, 17

*U.S. Small Bus. Admin. v. Progress Bank*, 2004 WL 2980412 (E.D. Pa. Dec. 22, 2004) ...........26

*U.S. v. Rocky Mountain Holdings, Inc.*, 2009 WL 564437 (E.D. Pa. Mar. 4, 2009) ................22

*Vassalotti v. Wells Fargo Bank, N.A.*, 2010 WL 3168065 (E.D. Pa. Aug. 9, 2010) .............20

*Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) ...........17

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) ...................................24, 26, 27

*Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838 (Pa. Com. Pl. Sept. 11, 2002) ...........23, 25

**OTHER SECONDARY SOURCES**

http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm ...........................3, 10

## <u>INTRODUCTION</u>

This case provides a compelling example of the type of abusive banking practices that have caused public outrage against large banks, and Bank of America in particular.[1]  When Pastor Richard M. Wulf ("Plaintiff") took out a mortgage loan with his local bank (Fulton Bank), he was required to obtain flood insurance in the amount of his principal balance, and did so.  However, after Plaintiff's note was assigned to Defendants Bank of America, N.A. ("BOA") and BAC Home Loans Servicing ("BAC") (collectively, "Bank of America"), the rules changed.  Suddenly, and without explanation, Bank of America claimed that his existing level of flood insurance was "not adequate," and demanded that he double his coverage amount, even though Plaintiff's existing level of coverage already satisfied the requirements of the National Flood Insurance Act ("NFIA") and the terms of his mortgage (which only required him to meet minimum federal flood insurance requirements).  Moreover, Bank of America threatened to force-purchase additional flood insurance for him – through one of its affiliates at an above-market premium – if he did not purchase such insurance on his own.

As a result of the above conduct, Plaintiff asserts statutory claims against Bank of America (Counts 1 and 2), for violating the Truth-in-Lending Act ("TILA") and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  In addition, Plaintiff asserts common law claims against Bank of America for fraud (Count 3), breach of the implied covenant of good faith and fair dealing (Count 4), and breach of contract (Count 5).  For the reasons set forth below, this Court should deny Bank of America's motion to dismiss these

---

[1] An entire website is devoted to Bank of America's abusive customer practices.  *See* www.bankofamericasucks.com.  Some of the complaints on this website mirror Plaintiff's complaint relating to unnecessary and excessive flood insurance requirements.  *See, e.g.,* http://www.bankofamericasucks.com/viewtopic.php?f=1&t=4908&hilit=flood+insurance; http://www.bankofamericasucks.com/viewtopic.php?f=1&t=5347&hilit=flood+insurance.

claims.  In fact, in a recent case involving similar conduct by another large bank (Chase), the court denied the bank's motion to dismiss, and held that the plaintiffs had stated valid claims under TILA and state law.  *See Hofstetter v. Chase Home Fin., LLC*, 2010 WL 4606478, at *13 (N.D.Cal. Oct. 29, 2010) ("*Chase II*").  There is no reason to reach a different result here or excuse Bank of America for the same conduct.

## FACTUAL BACKGROUND

Bank of America's recitation of the "factual background" is incomplete, and omits several important facts that were specifically alleged in Plaintiff's Complaint.  *See Defs' Memo at 3-4* (skipping *Complaint*, *¶¶ 13-14, 18-19*).  A more complete summary is provided below.

## I.     Flood Insurance Requirements Upon Loan Origination

On July 28, 2009, Plaintiff obtained a mortgage loan in the amount of $108,007 from Fulton Bank (*Complaint, ¶ 11*), a local bank headquartered in Pennsylvania.[2]  Because his dwelling is located in a "Special Flood Hazard Area" ("SFHA"), he was required to procure flood insurance for his property as a condition of obtaining this loan.   *Complaint, ¶ 12*. However, the documents he signed at closing did ***not*** require him to insure the property in excess of his principal balance.

Among other things, Plaintiff received and signed a flood hazard notice that provided that the "flood insurance purchased must cover the ***lowest of***: (1) the outstanding principal balance of the loan(s); or (2) the maximum amount of coverage allowed for the type of building under the NFIP [$250,000.00]; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan."  *Id., ¶ 13* (emphasis added); *see also Plaintiff Exhibit 1*.  This flood hazard notice was incorporated into Plaintiff's mortgage agreement. *Id., ¶ 14*.

---

[2] *See* http://www.fultonbank.com/viewpage.asp?n=9.

2

In addition, Plaintiff's mortgage contained a flood insurance clause, which provided that Plaintiff was required to insure the property "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD").  *Id*.  HUD, in turn, does not require flood insurance in excess of a borrower's principal balance.  To the contrary, HUD provides the following guidance to borrowers:

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

*Id.* (*citing* http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm); *accord*, 22 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . . in an amount at least equal to . . . the outstanding balance of the mortgage").

Finally, as Bank of America points out in its memorandum of law, the mortgage contained a separate ***hazard*** insurance clause, which provided that "[t]his insurance shall be maintained in the amounts and for the periods that lender requires."  *Docket No. 13-3 at ¶ 4*. However, the term "this insurance" was specific to hazard insurance (e.g., insurance against losses by fire), and did not address losses by floods, which were separately addressed in the flood insurance clause that followed.  *Id.*  Moreover, even if this hazard insurance provision had any applicability to flood insurance, Fulton Bank only required Plaintiff to take out $110,000 worth of flood insurance as a condition of obtaining his loan.  *Complaint, ¶ 15*.  Thus, the amount of flood insurance "that lender require[d]" was roughly the same amount as Plaintiff's loan balance.

During the time that Fulton Bank held Plaintiff's note, it never indicated that this amount of flood insurance ($110,000) was in any way inadequate under federal law or Plaintiff's mortgage agreement.  *Id.*  To the contrary, Fulton Bank paid for this amount of flood insurance out of the escrow account that it set up for Plaintiff's mortgage account, and charged Plaintiff for the premium.  *Id.*

3

**II.     Bank of America Falsely Claims that Plaintiff's Flood Insurance Is "Not Adequate" Ten Months After Assuming the Mortgage**

In September of 2009, Bank of America assumed Plaintiff's mortgage, and succeeded Fulton Bank as lender.  *Id., ¶ 16.*  This change in lenders did not change the substantive rights of the parties, and Bank of America remained fully bound by the terms of the original mortgage agreement.  *Id., ¶ 11.*  Thus, Plaintiff continued to make the same mortgage and escrow payments to Bank of America, and carried the same amount of flood insurance coverage as he had done before. *Id., ¶ 16.*

For ten months – from September of 2009 through June of 2010 – Bank of America accepted these payments and did not question the amount of flood insurance coverage that Plaintiff maintained on the property.  *Id., ¶ 19(e).*  However, on July 29, 2010, Bank of America suddenly sent Plaintiff a Demand for Increased Flood Coverage, claiming that his flood insurance coverage was "not adequate" under federal law and/or his mortgage agreement, and further stating that he was required to increase his flood insurance coverage by $103,703 (from $110,000 to more than $213,000).  *Id., ¶ 17; see also Plaintiff Exhibit 2.*  This Demand for Increased Flood Coverage also stated:

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property).

*Id.*

Bank of America's Demand for Increased Flood Coverage was inconsistent with the flood hazard notice and mortgage agreement that Plaintiff signed at closing, and conspicuously omitted to provide Plaintiff with a third option (as previously agreed) to insure the property to the "outstanding principal balance of the loan."  *Complaint, ¶ 17.*  Similarly, it deceptively

4

suggested that Plaintiff's flood insurance coverage was "not adequate" under federal law, even though the NFIA expressly allows borrowers to carry flood insurance on their property in an amount "equal to the outstanding principal balance of the loan[.]"   42 U.S.C. § 4012a(b)(1). Notably, Bank of America did not explain why the amount of flood insurance that Plaintiff previously had carried was no longer adequate under federal law and/or the mortgage agreement. *Complaint, ¶ 17.*

Bank of America further informed Plaintiff that if he did not obtain the additional coverage that it demanded by September 16, 2010, (1) BAC would purchase such additional coverage for him "through agencies that are affiliates of Bank of America, N.A."; (2) "Bank of America, N.A. and its affiliates may receive a commission or other compensation in connection with obtaining this coverage"; and (3) the "premium may be more expensive and will likely provide less coverage" than insurance he could obtain by himself.  *Id., ¶ 20.*  In addition, Bank of America suggested that Plaintiff contact its affiliate, Banc of America Insurance Services, Inc., to purchase the additional insurance and avoid having the insurance force placed upon him.  *Id.*

## III.   Bank of America Force-Places Unnecessary and Excessive Flood Insurance

After receiving Bank of America's Demand for Increased Flood Coverage, Plaintiff promptly increased his flood insurance coverage to the amount of his hazard insurance coverage on August 27, 2010, at an additional cost of $332 per year.  *Id., ¶ 21.*  Yet, on September 21, 2010, *after* Plaintiff already had obtained this increased flood insurance coverage, Bank of America sent him a "Notice of Force Placement," indicating that (1) BAC had purchased an additional $103,703 in flood insurance coverage for him anyway, and (2) "the cost of that policy will be charged to you and may become an additional debt secured by your mortgage or deed of trust and/or escrowed."  *Id., ¶ 22.*

5

This Notice of Force Placement acknowledged that "[w]e understand that you do have some flood insurance on the Property," but claimed that "based on our records, it is not adequate." *Id.* Bank of America further claimed in the Notice of Force Placement that "The Lender-Placed additional insurance will protect our interest in the Property." *Id.* However, its interest in the property already was fully protected by Plaintiff's initial flood insurance policy and was more than protected by the additional coverage that Plaintiff had obtained. *Id.*[3]

## IV.   Plaintiff's Claims

Based on the above facts, Plaintiff alleges that Bank of America fraudulently, deceptively, unfairly, and illegally forced Plaintiff to purchase and maintain excessive and unnecessary flood insurance coverage, in amounts greater than required by law and greater than its financial interest in the property, without any reasonable basis or justification, and without complying with applicable disclosure requirements under federal law. *Complaint, ¶ 1.* In addition, Plaintiff alleges that Bank of America intentionally misled Plaintiff to believe that this excessive flood insurance coverage was required by his mortgage agreement and/or federal law. *Id., ¶ 49.* Accordingly, Plaintiff asserts statutory claims against Bank of America under the TILA (Count 1) and UTPCPL (Count 2), and asserts common law claims for fraud (Count 3), breach of the covenant of good faith and fair dealing (Count 4), and breach of contract (Count 5).

---

[3] Although the Complaint does not specifically allege that Bank of America received notice of the additional flood insurance that Plaintiff purchased (*see Defs' Memo at 4*), Bank of America conspicuously does not deny that it received such notice prior to force placing the additional insurance. To the extent that this issue is relevant, it is best addressed in discovery. Regardless, the crux of Plaintiff's claims is that Plaintiff's ***pre-existing*** level of coverage – which was clearly known to Bank of America – already satisfied his obligations under his mortgage agreement and federal law, and therefore it was unlawful for Bank of America to represent that his coverage was "not adequate" and force-place additional coverage on his property. Although Bank of America asserts that it has cancelled the force-placed policy (*Defs' Memo at 9 n.5*), it does not claim that it refunded all of the charges ($534) for the period that the policy was in effect. In any event, Plaintiff has incurred additional expense for the additional coverage that he purchased under duress in order to avoid having a policy force-placed upon him.

**STANDARD OF REVIEW**

In order to state a claim, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, it is not necessary to plead "detailed factual allegations"; all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is not akin to a "probability requirement." *Id.* Rather, it merely requires enough factual allegations "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

In evaluating whether this standard has been met, the Court must construe the Complaint in the light most favorable to Plaintiff, accept all factual allegations as true, and draw all reasonable inferences in his favor. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Applying these principles, Plaintiff's Complaint "clearly satisfies this pleading standard, making a sufficient showing of enough factual matter (taken as true) to suggest the required elements of [Plaintiff's] claims." *Id.* at 235.[4]

**ARGUMENT**

**I.      Bank of America Had No Basis for Asserting that Plaintiff's Flood Insurance Coverage Was "Not Adequate"**

Bank of America had no basis for asserting, in its Demand for Increased Flood Coverage, that Plaintiff's existing level of flood insurance coverage was "not adequate." This was a blatant misrepresentation of both federal law and the terms of Plaintiff's mortgage agreement.

---

[4] "Even post-*Twombley*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotation marks omitted); *see also Phillips*, 515 F.3d at 233.

**A. Federal Law Does Not Require Flood Insurance In Excess of a Borrower's Principal Balance**

Bank of America's Demand for Increased Flood Coverage was predicated, in part, on "federal law." *Complaint, ¶ 17.* Yet, Bank of America remarkably makes **no** attempt to argue, to the Court, that federal law required flood insurance in excess of Plaintiff's principal balance. Nor could it.

The National Flood Insurance Act ("NFIA") addresses "[f]lood insurance purchase and compliance requirements" at 42 U.S.C § 4012a. The text of this statute makes plain that federal law does not require flood insurance beyond "the principal balance of the loan":

> Each Federal entity for lending regulation . . . shall by regulation direct regulated lending institutions not to make, increase, extend, or renew any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Director as an area having special flood hazards . . . , unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount *at least equal to the outstanding principal balance of the loan* or the maximum limit of coverage made available under the Act with respect to the particular type of property, *whichever is less*.

42 U.S.C. § 4012a(b)(1) (emphasis added). Likewise, federal banking regulations provide that "[t]he amount of insurance must be at least equal to *the lesser of the outstanding principal balance of the designated loan* or the maximum limit of coverage available for the particular type of property under the Act." 12 C.F.R. § 22.3 (emphasis added). This unambiguous language clearly demonstrates that flood insurance in the amount of the borrower's principal balance is adequate for purposes of federal law. *See Chase II*, 2010 WL 4606478, at *10 (NFIA does not require flood insurance on home equity credit line in amount greater than funds borrowed or available); *Norris v. Union Planters Bank*, 739 So.2d 869, 874 (La. 1st Cir. Ct. App.

1999) ("the flood insurance purchase requirement of Section 4012a(b) extends only to the amount of the outstanding loan balance").[5]

## B.   Plaintiff's Mortgage Documents Do Not Require Flood Insurance In Excess of His Principal Balance

Because Bank of America's Demand for Increased Flood Coverage was not supported by federal law, it is unsurprising that Bank of America focuses singularly on the terms of Plaintiff's mortgage. However, the documents that Plaintiff signed at closing did not impose greater flood insurance requirements on him, and simply reinforced the minimum insurance requirements of the NFIA.

### 1.   The Flood Insurance Notice that Plaintiff Signed at Closing Did Not Require Coverage In Excess of His Principal Balance

Consistent with the NFIA, the flood hazard notice that Plaintiff signed at closing provided that the amount of "flood insurance purchased must cover the ***lowest of***: (1) the ***outstanding principal balance of the loan(s)***; or (2) the maximum amount of coverage allowed for the type of building under the NFIP [$250,000.00]; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan." *Complaint, ¶ 13* (emphasis added); *see also Plaintiff Exhibit 1*. This flood hazard notice was incorporated into Plaintiff's mortgage agreement (*Complaint, ¶ 14*), and bears upon the interpretation of the mortgage agreement because it was made part of the documents that he signed at closing. *See Sanford Inv. Co. v.*

_____

[5]Because Plaintiff's existing level of flood insurance coverage was adequate for purposes of federal law, Bank of America had no authority, under the NFIA, to force-place additional coverage on his property. *See Norris*, 739 So. 2d at 874 ("as a matter of law, [defendants] purchased more flood insurance than they were authorized to purchase under the Act" when they forced-placed an amount greater than the minimum requirement under the NFIA). The NFIA only authorizes force placement for the minimum amount required by statute. *See* 42 U.S.C. § 4012a(e)(1)–(2) ("[If] the lender or servicer for the loan determines that the building or mobile home . . . is covered by such insurance in an amount less than the amount ***required*** for the property pursuant to [this statute,] the lender or servicer for the loan shall purchase the insurance on behalf of the borrower . . . ." (emphasis added)).

*Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999) ("Under Pennsylvania law, when two or more writings are executed at the same time and involve the same transaction, they should be construed as a whole.") (internal quotation marks omitted).  Yet, Bank of America entirely ignores the language of this flood insurance notice in its brief.

2.      **The Flood Insurance Provision in Paragraph 4 of the Mortgage Did Not Require Coverage In Excess of Plaintiff's Principal Balance**

Plaintiff's mortgage agreement also contained a specific flood insurance provision that reincorporated this minimum federal standard.  Under Paragraph 4 of the mortgage, Plaintiff was only required to insure the property "against loss by floods to the extent required by the Secretary" of HUD.  *Complaint, ¶ 13.*  As Bank of America acknowledges in its brief, HUD's regulations do not require flood insurance in excess of a borrower's principal balance.  *See Defs' Memo at 7-8* (*citing* 22 C.F.R. § 203.16a(c)) ("flood insurance must be maintained . . . in an amount at least equal to either **the outstanding balance of the mortgage**, less estimated land costs, or the maximum amount of the NFIP insurance available with respect to the property improvements, **whichever is less**.") (emphasis added).[6]

Although Bank of America argues that HUD's regulations "permit" banks to demand flood insurance in excess of a borrower's principal balance (*Defs' Memo at 7*), this argument misses the point.  The relevant question is not what HUD's regulations "permit," but what they "require," because Plaintiff only was obligated under his mortgage to insure the property "against loss by floods to the extent **required**" by HUD.  *Complaint, ¶ 13 (emphasis added).*  Moreover, none of the documents that Plaintiff signed at closing put him on notice that he would be obligated to obtain additional flood insurance in excess of federal requirements.

---

[6] In fact, HUD explicitly states on its website that "[f]or loans . . . , the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan. *Complaint, ¶ 14* (*citing* www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm).  There is no inconsistency between HUD's regulations and its summary of its flood insurance requirements on its website.

3.   The *Hazard* Insurance Provision in the Mortgage Did Not Require Plaintiff to Obtain Additional *Flood* Insurance

Instead of focusing on the flood insurance provisions that Plaintiff agreed to at closing, Bank of America relies on a separate provision in Paragraph 4 of the mortgage agreement relating to **hazard** insurance:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the period that Lender requires.

*Defs' Memo at 6* (*citing Docket 13-3 at ¶ 4*) (emphasis omitted).  This provision wholly fails to support Bank of America's argument that Plaintiff's flood insurance was "not adequate," for at least three reasons.

First, general hazard insurance (also known as homeowner's insurance) is different from flood insurance, and covers different types of losses (e.g., losses due to fire or wind damage). *See Davis v. Allstate Ins. Co.*, 2009 WL 122761, at *2 (E.D. La. 2009) ("There is no dispute that damage from flood is excluded under the homeowner's policy. Because there is no coverage for damage from flood under the homeowner's policy, both policies of insurance do not cover the same loss."); *accord*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 221 (5th Cir. 2007).[7] For this reason, Plaintiff's mortgage agreement separately addresses flood insurance in the sentence that immediately follows the hazard insurance provision.  Thus, the hazard insurance provision has no bearing on the amount of flood insurance that was required.

Second, even if this hazard insurance provision applied to flood insurance – which it does not – Plaintiff only was required to maintain $110,000 worth of flood insurance as a condition of obtaining his loan.  *Complaint, ¶ 15*.  Thus, the amount of flood insurance "that lender

---

[7] Indeed, the very fact that flood losses are not covered by standard hazard insurance policies is what caused the federal government to establish a separate National Flood Insurance Program.

require[d]" was roughly the same amount as Plaintiff's principal balance.  Nothing in the closing papers indicated that this coverage requirement was an introductory requirement or would change, and there is certainly nothing to suggest that this level of coverage was inadequate.

Finally, in *Chase II*, the court construed an almost identical mortgage provision, and held that it did not give Chase the right to increase its flood insurance requirements beyond the amount that it initially required.  In that case, Chase initially required the borrower to procure flood insurance in the amount of his credit line ($100,000).  *Chase II*, 2010 WL 4606478, at *3.  However, it later sent him a form letter claiming that "your minimum acceptable flood insurance amount is $250,000" and "your flood coverage amount of $100,000.00 . . . is below the minimum requirement for your loan."  *Id.* at *4.  Although Chase's mortgage agreement provided that both flood and hazard insurance "shall be maintained in the amounts and for the periods that we require[,]" the court held that this language was not sufficient to allow Chase to change its flood insurance requirements.  *Id.* at *10 ("[Chase] cannot rely on this so-called 'agreement' to justify the 'change of terms' alleged herein.").  According to the court, if Chase wanted to reserve its right to change its flood insurance requirements at a later date, it was obligated to put the borrower on notice of specific events that might trigger a change, and specifically advise the borrower how much flood insurance would be required in the event of such a change.  *Id.*  Because Chase failed to do so, the court held that it was subject to liability under the TILA.  The same holds true for Bank of America.

## II.    Plaintiff Has Stated a Valid TILA Claim Against Bank of America

The purpose of the TILA is to assure "meaningful disclosure of credit terms" and "protect the consumer against inaccurate and unfair credit billing" practices.  15 U.S.C. § 1601(a).  In order to accomplish this objective, the TILA imposes two requirements on creditors.  First,

creditors are required to make certain specific disclosures mandated by the statute and its accompanying regulations, known as "Regulation Z." *See, e.g.,* 15 U.S.C. §§ 1638-39; 12 C.F.R. §§ 226.18-20.  Second, creditors have a "General Disclosure Requirement[]" to truthfully and accurately disclose the terms of the legal obligation between the parties.  12 C.F.R. § 226.17(c); *see also Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002) ("TILA prohibits not only failures to disclose, but also false or misleading disclosures.").  Accordingly, Bank of America cannot argue that it was free to provide borrowers with misleading information, simply because TILA and Regulation Z do not contain a specific subsection relating to flood insurance coverage disclosures.  As the name of the Act implies, it requires "truth in lending."

### A.  Bank of America Violated 12 C.F.R. § 226.17(c) by Misrepresenting the Terms of the Legal Obligation Between the Parties

TILA's truthfulness requirement prohibits "not only literal falsities, but also misleading statements."  *Roberts v. Fleet Bank, N.A.*, 342 F.3d 260, 266 (3d Cir. 2003) (internal quotation marks omitted).   Moreover, the duty to make truthful and accurate disclosures is an ongoing duty, and applies to ***both*** subsequent disclosures and initial disclosures at the time of the transaction.  *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting defendant's argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the transaction").  Thus, where a creditor sends out notices, after the date of the transaction, which misstate the borrower's obligations, such notices give rise to liability under the TILA.  *See Hubbard*, 91 F.3d at 79 (defendant's "payment adjustment notices were required to reflect the loan agreement"); *Demando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) ("Because the Notice contained terms that were in violation of the credit agreement, the Notice violated Regulation Z.").

Here, Bank of America's Demand for Increased Flood Coverage violated the TILA because it misrepresented Plaintiff's flood insurance obligations under his mortgage agreement and federal law, and falsely asserted that Plaintiff's existing level of flood insurance coverage was "not adequate." Specifically, Plaintiff alleges that the Demand for Increased Flood Coverage was deceptive and misleading because:

    a) the plain language of the relevant loan and mortgage documents did not require flood insurance in excess of Plaintiff's principal balance;

    b) the NFIA and its accompanying regulations do not require flood insurance in excess of a borrower's principal balance;

    c) HUD does not require flood insurance in excess of a borrower's principal balance;

    d) Fulton Bank did not require coverage in excess of Plaintiff's principal balance during the time that it held and serviced the mortgage;

    e) Bank of America held and serviced Plaintiff's mortgage for ten months, without claiming that Plaintiff's existing flood insurance was inadequate;

    f) Bank of America did not and cannot identify any changes in federal law, the mortgage documents, or the circumstances surrounding the loan that justified its representation that Plaintiff's coverage was suddenly not "adequate;" and

    g) Bank of America's Demand for Increased Flood Coverage clearly deviated from the language of the earlier Flood Hazard Notice, and fraudulently omitted to provide Plaintiff the option to maintain flood insurance in the amount of "the outstanding principal balance of the loan(s)[.]"

*Complaint, ¶ 19.*

With respect to point (g), the court's analysis in *Chase II* is directly on point. In that case, the borrower initially received a flood insurance notice that "track[ed] the minimum flood insurance requirements set forth in the NFIA," and required flood insurance in an amount equal to the "lesser" of the following ***three*** options:

    • The maximum amount of insurance coverage available through the National Flood Insurance Program (NFIP), which is currently $250,000; or

- 100% of the full replacement cost value of the dwelling and insurable improvements; or

- The principal balance of the loan or credit line amount for lines of credit.

*Chase II*, 2010 WL 4606478, at *13.   However, the bank later sent the borrower a second notice demanding that he increase his flood insurance coverage, and only gave him the first ***two*** coverage options: the NFIP maximum of $250,000 or full replacement cost value.  *Id.*  The court found that this second notice was deceptive because, "[u]nlike the prior notice which included language that tracked the minimum requirements of the NFIA, the criteria set forth in the 'new' notice made no reference to either the principal balance of the loan or the credit line amount for lines of credit."  *Id.*  Accordingly, it held that "[b]y making this move, defendants exposed themselves to both the requirements of the TILA and applicable state laws."  *Id.*

The facts of the present case are identical.  Like the borrower in *Chase II*, Plaintiff initially received a flood insurance notice that gave him the option to insure to his property to the "lowest of" three options: (1) the outstanding principal balance; (2) the NFIP maximum of $250,000; or (3) full replacement cost value.  *Complaint, ¶ 13; Plaintiff Exhibit 1.*   However, Bank of America's subsequent Demand for Increased Flood Coverage gave Plaintiff only the last two coverage options (NFIP maximum or replacement cost value), and conspicuously omitted to provide Plaintiff with a third option (as previously agreed) to insure the property to the outstanding principal balance of the loan.  *Complaint, ¶ 17*; *Plaintiff Exhibit 2.*  By making the same move as Chase, Bank of America also exposed itself to TILA liability.[8]

Notably, Bank of America does not rely on 12 C.F.R. § 226.17(e), which shields a creditor from TILA liability "when the consumer fails to fulfill a prior commitment to keep the

---

[8] Although *Chase II* dealt with an open-ended credit plan (credit line), the duty to accurately disclose the terms of the legal obligation between the parties applies to both open-ended and closed-ended credit plans.  *Cf.* 12 C.F.R. § 226.5(c) (open-ended credit plans) *with* 12 C.F.R. § 226.17(c) (closed-ended credit).

collateral insured and the creditor then provides the coverage and charges the consumer for it[.]"

12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1.  Moreover, even if Bank of America did rely on this

provision, it does ***not*** shield a creditor from liability where the consumer has lived up to his prior

commitments, and the creditor force-places or attempts to force-place additional insurance

coverage that was never authorized in the underlying agreement:

> Although not entirely clear, Defendant appears to suggest that even if its initial
> disclosure became inaccurate because of its own action (the procurement of
> unauthorized insurance and charging it to Plaintiffs' account), § 226.17(e)
> nevertheless dictates that the disclosure is not a violation of the regulation.
> Again, the court disagrees.  The nature of the example given in the Staff
> Commentary to § 226.17(e)--a failure by the *consumer* to fulfill a prior
> commitment--suggests that the immunity for inaccuracies caused by subsequent
> events is not to be afforded to the creditor when the creditor causes the events that
> result in the inaccuracies.  Applying § 226.17(e) where the subsequent inaccuracy
> was caused by the creditor would transform TILA, the purpose of which is to
> *advance* the informed use of credit on the part of the consumer, see 15 USC §
> 1601(a), into a potential vehicle for fraud by creditors.  Considering the fact that
> TILA is to be interpreted liberally to achieve its purpose, the court concludes that
> Defendant's interpretation of § 226.17(e) cannot be right.

*Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226, 1230 (N.D. Ill. 1995) (emphasis in original).

Therefore, Bank of America may not argue on reply that its actions were justified under 12

C.F.R. § 226.17(e).

## B.   Bank of America Violated 12 C.F.R. § 226.18 by Failing to Provide Plaintiff with New Credit Disclosures

In addition to misrepresenting Plaintiff's obligations under his mortgage and federal law,

Bank of America also violated TILA by failing to supplement its credit disclosures to account for

the new flood insurance coverage that it demanded and force-placed.  Although Bank of America

argues that no supplemental disclosures were required under 12 C.F.R. § 226.20(a) because it did

not "refinance" Plaintiff's existing loan (*Defs' Memo at 16*), this argument once again misses the

point.  By demanding and ultimately purchasing flood insurance coverage that was not

authorized as part of the original loan transaction, Bank of America entered into a separate

transaction that triggered a new set of disclosures under 12 C.F.R. § 226.18.  *See Travis*, 880 F. Supp. at 1229-30 ("Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" that "required new disclosures" under 12 C.F.R. § 226.18); *Vician v. Wells Fargo Home Mortg.*,  2006 WL 694740, at *5 (N.D. Ind. Mar. 16, 2006) ("Wells Fargo's actions in force-placing insurance on Plaintiffs' account may have triggered new disclosures under section 226.18 of Regulation Z. . . .  Consequently, although Plaintiffs may have failed to state a TILA claim under section 226.20 of Regulation Z, the Court finds that Plaintiffs have certainly stated a TILA claim under section 226.18 of Regulation Z."); *accord*, *Motley v. Homecomings Financial, LLC*, 557 F. Supp.2d 1005, 1009 & n.3 (D. Minn. 2008).[9]

Although Bank of America argues that insurance premiums are not considered "finance charges" if the borrower is free to select the insurance carrier (*Defs' Memo at 14-15*), this rule does not apply where a lender demands and force-places ***unauthorized*** insurance.  *See Bermudez v. First of Am. Bank Champion, N.A.*, 860 F. Supp. 580, 601 (N.D. Ill. 1994), *withdrawn pursuant to settlement*, 886 F.Supp. 643 (N.D. Ill. Mar 22, 1995) ("If a factfinder found such charges to be unauthorized, then it could also find that the charging of plaintiffs' accounts for the cost of that insurance . . . [was] a finance charge."); *accord*, *Travis*, 880 F. Supp. at 1229-30 (premiums for unauthorized insurance constituted "finance charges").  In fact, the court in *Chase II* specifically held that Chase was subject to liability under the TILA for failing to make mandatory "finance charge" disclosures in connection with the flood insurance coverage that it

---

[9] Even where the force-placement of insurance is authorized – which it was not here – "[t]he creditor may . . . be required to make new disclosures."  12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1.

demanded and force-placed over and above federal requirements.  *See Chase II*, 2010 WL 4606478, at *11.

### C.    Plaintiff's TILA Claim Is Timely

It is absurd for Bank of America to argue that Plaintiff's TILA claim is time-barred.  *See Defs' Memo at 15-16.*  Plaintiff filed this action on October 1, 2010, barely two months after Bank of America issued its Demand for Increased Flood Coverage on July 29, 2010, and just days after Bank of America force-placed additional flood insurance coverage on his property on September 21, 2010.  Because Plaintiff's TILA claim arises from these actions (subsequent to the initial loan disclosures), it easily falls within the one-year limitations period.

Although Bank of America cites *Hofstetter v. Chase Home Fin., LLC*, 2010 WL 3259773 (N.D.Cal. Aug. 16, 2010) ("*Chase I*") in support of its purported statute-of-limitations defense (*Defs' Memo at 15*), its reliance on this authority is misleading.  Following the court's initial ruling in *Chase I*, it subsequently held that the TILA claim in that case was ***not*** time-barred because the claim was based on Chase's subsequent conduct.  As the court explained in *Chase II*:

> [T]his order agrees with plaintiff that a plausible and timely claim under the TILA has now been stated. . . . The central reason why plaintiff's TILA claim was dismissed as time-barred in the August 2010 order was its apparent focus on the *initial* disclosures made by JPMorgan Chase Bank when the HELOCs in question were consummated. Plaintiff's revamped TILA claim now focuses upon *subsequent* disclosures made by JPMorgan Chase Bank years after the loans were originated that supposedly "changed the terms" of the mortgages held by [plaintiffs].

*Chase II*, 2010 WL 4606478, at *6-7 (emphasis added).

Here, Plaintiff's TILA claim against Bank of America also focuses on the bank's subsequent conduct after origination of the loan.  In fact, it is practically a mirror image of the TILA claim in *Chase II*:

| *Chase II* Allegations: | Plaintiff Wulf's Allegations |
|---|---|
| [Chase] violated the TILA by, *inter alia,* (i) adversely changing the terms of Plaintiffs' credit plans after origination without Plaintiffs' consent by requiring and force-placing more insurance than appropriate to protect its interest in the property; and (ii) failing to provide proper notice, after origination, that JPM was amending the terms of the credit plans as described in the deeds of trust. *Chase II*, 2010 WL 4606478, at *7. | BOA violated the TILA by, *inter alia*, (i) adversely changing the terms of mortgage loans or credit lines after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect its interest in the property; and (ii) failing to provide proper notice, after origination, that BOA was amending the terms of loans or credit lines as described in the relevant mortgage documents. *Complaint, ¶ 40.* |

Accordingly, Plaintiff also is entitled to proceed with his TILA claim.[10]

## III.    Plaintiff Has Asserted Valid Claims for Fraud and Violation of the UTPCPL

Plaintiff also asserts valid claims against Bank of America for violating the UTPCPL (Count 2) and for common law fraud (Count 3).   Each of the elements of these claims are specifically pled in the Complaint, and Bank of America cannot escape liability for these claims under the "economic loss doctrine."

---

[10] Even if Plaintiff's TILA claim arose from inaccuracies in the underlying mortgage documents – which it does not because the mortgage documents accurately described the amount of flood insurance that was required as a condition of obtaining credit –  the claim would be timely because Plaintiff had no reason to complain until Bank of America took action that was inconsistent with the initial loan disclosures.  *See Goldman v First Nat'l Bank*, 532 F.2d 10, 21-22 (7th Cir. 1976) ("We are persuaded that when, as here, there has been an incomplete, inaccurate or misleading disclosure, the limitations period should not be measured from the date the disclosure was required by law to be made, but instead by the date on which a finance charge was first imposed. … Until a finance charge is levied the debtor has no cause for complaint since there has been no action inconsistent with the inaccurate disclosure."); *accord*, *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir. 1998) (recognizing that TILA claims are subject to equitable tolling principles).  Here, the Complaint specifically alleges that "[t]he statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that he had a reasonable opportunity to discover [Bank of America's] TILA violations and complain about such violations." *Complaint, ¶ 42.*  Although Bank of America disagrees, it would not be appropriate for this Court to decide this issue on a Rule 12 motion.  *See In re Comm. Bank of Northern Virginia*, 622 F.3d 275, 301-02 (3d Cir. 2010) ("[B]ecause the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.").

A.      **Plaintiff's Statutory and Tort Claims Are Adequately Pled**

1.      **Violation of the UTPCPL**

The UTPCPL is designed to protect consumers from "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201-2(4). In addition to declaring several specific acts unlawful, it also contains a catch-all provision that broadly prohibits any "fraudulent *or* deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi) (emphasis added).

Because this catch-all provision is worded in the disjunctive, a plaintiff may assert a claim for "deceptive conduct" under the statute, regardless of whether the defendant's conduct meets all of the elements of common law fraud. *See, e.g., Lawn v. Enhanced Serv. Billing, Inc.*, 2010 WL 2773377, at *4 (E.D. Pa. July 13, 2010) ("Plaintiff is not obligated establish each element of common law fraud, so long as he has alleged deceptive conduct.").[11] In fact, the statute was specifically amended in 1996 to add "deceptive conduct" as a separate basis for liability. *Seldon*, 647 F. Supp. 2d at 468.

In light of the above case law and the history of the statute, it is wrong for Bank of America to conflate Plaintiff's statutory claim for deceptive conduct under the UTPCPL with Plaintiff's claim for common law fraud. When Bank of America's local counsel (Mr. Bryce) attempted to make the same arguments in another case last year, those arguments were rejected

---

[11] *Accord, Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) ("if a plaintiff alleges deceptive conduct, a plaintiff need not allege the elements of common law fraud"); *Andrews v. Stiffler*, 9 Pa. D & C 5th 334, 337 (Pa. Comm. Pl. July 9, 2009) ("Defendant claims that plaintiff must plead all the elements of common law fraud in order to make out a case under the CPA. That is not an accurate statement of the law."); *Chiles v. Ameriquest Mort. Co*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008) ("[A]ll elements of common law fraud need not be proven if [p]laintiff alleges deceptive conduct."); see also *Vassalotti v. Wells Fargo Bank, N.A.*, 2010 WL 3168065, at *6 (E.D.Pa. Aug. 9, 2010) ("A plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud *or by otherwise alleging deceptive conduct*") (emphasis added).

by the court.  *See Birchall v. Countrywide Home Loans, Inc.*, 2009 WL 3822201, at *10 (E.D. Pa. Nov. 12, 2009) ("[T]he Court will join others in this district to permit a plaintiff who alleges deceptive conduct to proceed without alleging all of the individual elements of common law fraud.") (string citing several cases).  This Court should reject the same recycled arguments (which are based on outdated case law from 2003) here.

Under the "conventional analysis" that applies to claims under the UTPCPL, "plaintiffs alleging deceptive practices need only allege deceptive conduct and an ascertainable loss." *Birchall*, 2009 WL 3822201, at *10.  Plaintiffs have satisfied both of those elements here.  The Complaint specifically alleges that Bank of America engaged in "deceptive" conduct by misleading Plaintiff to believe that additional flood insurance coverage was required by his mortgage and/or federal law.  *Complaint, ¶ 49.*  The Complaint also alleges that Plaintiff "suffered ascertainable losses and damages in the form of increased insurance premiums, escrow charges, interest payments, and/or other charges, and unnecessary burdens on [his] property rights." *Id., ¶ 53.*  Accordingly, Plaintiff has stated a valid claim for deceptive conduct under the UTPCPL.

### 2.     Common Law Fraud

In any event, Plaintiff has satisfied all of the elements of common law fraud.  In order to state a claim for common law fraud, a plaintiff must plead: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on this misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  *Seldon*, 647 F. Supp. 2d at 472.  Here, the Complaint specifically pleads each of these elements.  *See Complaint, ¶¶ 55-60; see also id., ¶¶ 17-22.*

Bank of America only disputes the adequacy of Plaintiff's allegations with respect to the third and fourth elements: falsity of the representation and intent to mislead.  For the reasons previously explained, Bank of America clearly made a false representation by asserting that Plaintiff's existing level of coverage was "not adequate" under federal law and/or his mortgage agreement.  Moreover, Bank of America made this representation as part of its Demand for Increased Flood Coverage, for the express purpose of misleading Plaintiff to rely on the misrepresentation and unnecessarily purchase $100,000 worth of additional flood insurance coverage (which is exactly what happened).  *See Complaint, ¶¶ 17 ,21, 58(iv)-(v).*  Accordingly, Plaintiff has stated a valid fraud claim here.  *See Chase I*, 2010 WL 3259773, at *15 (finding that borrower would have stated a valid claim under "fraudulent" prong of California's Unfair Business Practices Act if she had been induced to purchase additional insurance as a result of Chase's form letter stating that additional coverage was required).

Although Bank of America argues that Plaintiff should have pled intent with greater specificity, Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged ***generally***."  Fed. R. Civ. P. 9(b) (emphasis added).  "Accordingly, a plaintiff need not plead intent with the same particularity as required of the circumstances constituting the alleged [fraud]." *U.S. v. Rocky Mountain Holdings, Inc.*, 2009 WL 564437, at *5 (E.D. Pa. Mar. 4, 2009); *see also Hollander v. Etymotic Research, Inc.*, 2010 WL 2813015, at *5 (E.D. Pa. July 14, 2010 ("The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was fraudulent intent.") (internal quotation marks omitted); *Glover v. Bally Total Fitness Corp.*, 2007 WL 465578, at *4 (M.D. Pa. Feb. 9, 2007) ("Since Defendants' intent may be averred generally, the fact that the unpaid charge was submitted to the credit reporting agencies

infers the intent of Defendants to have this information acted upon to Plaintiff's detriment."). Plaintiff's intent allegations go above and beyond what is required at this stage of the proceedings.[12]

**B.      Plaintiff's Statutory and Tort Claims Are Not Barred by the Economic Loss Doctrine**

Bank of America cannot escape Plaintiff's well-pled allegations of fraud and deceptive business practices by invoking the "economic loss doctrine" or its cousin, the "gist of the action" doctrine.  If the Court were to accept Bank of America's arguments at face value, no plaintiff ever could assert a claim for mortgage fraud because the fraud would necessarily involve a mortgage contract.  Similarly, a lender would never be subject to a claim for deceptive conduct under the UTPCPL because the harm to the borrower would always be "economic" in nature. Pennsylvania courts do not provide such blanket protection to wrongdoers.  *See, e.g., Andrews v. Stiffler*, 9 Pa. D & C 5th at 336 ("Were the court to accept defendant's assertion that a breach of contract claim precludes the assertion of a CPA claim, that would completely eviscerate the CPA, which by its nature deals almost exclusively with consumer contracts. Therefore, the court will overrule this preliminary objection as such.").[13]

---

[12] For example, Plaintiff specifically pleads, based on the language of the demand letter that he received, that Bank of America had several financial motives to demand and/or force-place additional flood insurance.  *See Complaint, ¶¶ 20, 58.*  Further detail cannot reasonably be expected in advance of discovery.  *See EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 882 (3d Cir. 2000) ("It is difficult to see how [plaintiff] could have pled fraud or scienter with more specificity without having been given the opportunity to conduct any discovery.")

[13] *Accord, Smith v. Reinhart Ford*, 68 Pa. D & C 4th 432, 438 (Pa. Ct. Comm. Pl. Sept. 29, 2004) ("Allowing the economic loss doctrine to bar a plaintiff's UTPCPL claim would eviscerate the purpose of the statute, which the legislature enacted with full knowledge of the existence of common-law contract remedies."); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, at *7 (Pa. Com. Pl. Sept. 11, 2002) ("[A] blanket application of the economic loss doctrine to the UTPCPL fails to address the purpose of enacting the statute. . . . To apply the economic loss doctrine to *all* claims under the UTPCPL has the potential to eviscerate the UTPCPL itself.")

1.       ***Werwinki* Is Inapplicable to the Present Case**

Although Bank of America tries to shoehorn this case into the Third Circuit's holding in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), that case has no application here. *Werwinski* did not involve a claim for mortgage fraud or deceptive lending or mortgage servicing.  Rather, it was a products liability case that addressed the application of the economic loss doctrine to claims arising from defective automobile transmissions.  While the economic loss doctrine may have some application in certain products liability cases,[14] it has no application outside of that context.  *See Bohler-Uddeholm Amer., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104, n. 11 (3d Cir. 2001) ("The application of the economic-loss doctrine to the instant case does not quite fit because that doctrine developed in the context of courts' precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself."); *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672, at *11 (E.D. Pa. Feb. 4, 2004) ("The Economic Loss Doctrine has traditionally been applied to products liability actions, while the corresponding 'gist of the action' doctrine is applied to other types of actions.").  Indeed, it would be particularly inappropriate to apply the economic loss doctrine here, because the Third Circuit previously has held that a borrower may bring suit against a mortgage company under the UTPCPL to recover a "loss of money or property[.]"  *See In re Smith*, 866 F.2d 576, 582-84 (3d Cir. 1989).

2.       **Numerous Courts Have Declined to Follow *Werwinski***

Even in the products liability context, the Third Circuit has expressed discomfort with its earlier panel decision in *Werwinski*, and has noted that subsequent decisions in this district and

---

[14] The economic loss doctrine addresses the concern that if **product liability** remedies "were allowed to progress too far, contract law would drown in a sea of tort."  *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986).

Pennsylvania's state courts "have rejected *Werwinski*'s prediction that the Pennsylvania Supreme Court would apply the economic loss rule in claims under the Consumer Protection Law." *See Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 401 n.5 (3d Cir. 2004) (*citing*, *inter alia*, *O'Keefe v. Mercedez-Benz USA, LLC*, 214 F.R.D. 266, 277 (E.D. Pa. 2003); *Oppenheimer v. York Int'l*, 2002 WL 31409949, at *5 (Pa. Com. Pl. Oct. 25, 2002); *Zwiercan*, 2002 WL 31053838, at *7)).[15]   For example, in *O'Keefe*, a case from this district, the court held that it could not follow the *Werwinski* panel's decision because it was "not in harmony with Pennsylvania state law" and inconsistent with the "decisions of the state's intermediate appellate courts." *O'Keefe v. Mercedez-Benz USA, LLC*, 214 F.R.D. 266, 275, 277 (E.D. Pa. 2003).[16]

Numerous decisions, post-*Werwinski*, have declined to apply the economic loss rule or the "gist of the action" doctrine to claims under the UTPCPL. *See Reinhart Ford*, 68 Pa. D & C 4th at 437 ("[T]he economic loss doctrine does not bar plaintiff's UTPCPL claim . . . .   Even though the Third Circuit ruled that the doctrine barred such claims [in *Werwinski*], Pennsylvania state courts have refused to apply the doctrine to UTPCPL claims."); *accord*, *In re Fowler*, 425 B.R. 157, 190-91 (Bkrtcy. E.D. Pa. 2010) (declining to apply economic loss doctrine to UTPCPL claim involving mortgage); *Clark v. EMC Mortg. Co.*, 2009 WL 229761, at *6 (E.D. Pa. Jan. 29, 2009); *Andrews*, 9 Pa. D & C 5th at 336; *Smith v. John Hancock*, 2008 WL 4072585, at *11

---

[15] Several cases in this district have noted the same phenomenon. *See, e.g., McElwee Group, LLC v. Mun. Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 477 n.7 (E.D. Pa. 2007) ("While it is true that the Third Circuit recently held in *Werwinski* that Pennsylvania's economic loss doctrine would also bar claims for intentional torts, at least two lower court cases have come to the opposite conclusion, post-*Werwinski*.") (*citing O'Keefe* and *Oppenheimer*); *Seward v. Certo*, 2006 WL 266150, at *2 (E.D.Pa. Feb. 2, 2006) ("Pennsylvania courts, noting that lower federal court holdings are not binding on state courts, have expressly disagreed with *Werwinski's* holding and refused to apply the economic loss doctrine to UTPCPL claims.") (*citing Zwiercan* and *Smith v. Reinhart Ford*, 68 Pa. D & C 4th 432, 437-38 (Pa. Ct. Comm. Pl. Sept. 29, 2004)).
[16] Even in *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 557 (M.D. Pa. 2010) (cited in Defs' Memo at 11), the court stated that "the Third Circuit's interpretation of Pennsylvania law in *Werwinski* was incorrect for the reasons stated . . . in *O'Keefe*[.]"

(E.D.Pa. Sept. 2, 2008) (declining to apply economic loss doctrine to UTPCPL claim involving mortgage); *NutriSystem, Inc. v. Nat'l Fire Ins. Of Hartford*, 2004 WL 2646598, at *6 (E.D. Pa. Nov. 19, 2004).[17]  Similarly, several decisions have held, post-*Werwinski*, that the economic loss doctrine and "gist of the action" doctrine do not operate to bar claims for intentional misrepresentation.  *See, e.g., O'Keefe*, 214 F.R.D. at 278 ("Pennsylvania's economic loss doctrine is inapplicable to intentional torts.").[18]  This court should reach the same result here.

### 3.    Plaintiff's UTPCPL and Fraud Claims Fall within the Exception to the Economic Loss Doctrine Recognized by *Werwinski*

Finally, even if *Werwinski* applied outside of the products liability context (which it does not), and even if it was good law (which it is not), the economic loss doctrine only "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows **only** from a contract.'"  *Werwinski*, 286 F.3d at 671 (emphasis added).  The same limitation applies to the "gist of the action" doctrine.  *See Defs' Memo at 11 n.9* ("The 'gist of the action' doctrine bars any tort claim . . . which is **wholly** dependant on the terms of a contract.") (emphasis added).  Thus, these doctrines have no application "where the claims at issue arise independently of the underlying contract."  *Werwinski*, 286 F.3d at 676.

Here, Plaintiff's statutory and tort claims fall within this exception because they are based on Bank of America's misrepresentation – independent of the mortgage agreement – that his

---

[17] Indeed, courts do not even have discretion to apply the economic loss doctrine or the gist of the action doctrine to UTPCPL claims, since "Pennsylvania's statutory construction statute clearly bars applying common law doctrine to overturn legislative acts[.]"  *O'Keefe*, 214 F.R.D. at 275.

[18] *Accord, Smith v. John Hancock Inc. Co.*, 2008 WL 4072585, at *10 (holding that "the economic loss doctrine does not bar [p]laintiff's claim for fraud/intentional misrepresentation"); *U.S. Small Bus. Admin. v. Progress Bank*, 2004 WL 2980412, at *6 (E.D. Pa. Dec. 22, 2004) ("the emerging trend in lower Pennsylvania courts and in other jurisdictions has been to permit purely economic recovery in causes of action for intentional fraud"); *Air Prods. Chems., Inc. v. Easton Metal Prods. Co.*, 256 F. Supp. 2d 329, 336 (E.D. Pa. 2003) ("the underlying purposes of the economic loss doctrine suggest that the Pennsylvania Supreme Court would rule that it does not apply to this kind of fraudulent misrepresentation").

flood insurance coverage was "not adequate." *See, e.g.*, *John Hancock Inc. Co.*, 2008 WL 4072585, at *10 (defendant's misrepresentations fit within exception recognized by *Werwinski*); *Reinhardt Ford*, 68 Pa. D & C 4th at 438 ("[T]he doctrine does not bar plaintiff's UTPCPL claims regarding the defendants' alleged misrepresentations."); *NutriSystem*, 2004 WL 2646598, at *6 (refusing to dismiss consumer fraud claims based on "the making of false statements by Nutrisystem").  The falsity of this representation is evidenced by numerous facts separate and apart from Plaintiff's mortgage agreement: (1) Fulton Bank did not require coverage in excess of Plaintiff's principal balance; (2) Bank of America held and serviced Plaintiff's mortgage for ten months, without claiming that Plaintiff's existing flood insurance was inadequate; (3) the NFIA does not require flood insurance in excess of a borrower's principal balance; and (4) Bank of America did not and cannot identify any changes in federal law or the circumstances surrounding the loan that justified its representation that Plaintiff's coverage was suddenly "not adequate."

Although the falsity of this representation is also evidenced, in part, by the fact that it was inconsistent with the language of Plaintiff's underlying mortgage documents, this does not mean that Plaintiff's statutory and tort claims "flow[] ***only*** from a contract."  *Werwinski*, 286 F.3d at 671 (emphasis added).  As the Court explained in *Greater Philadelphia Health Servs. II Corp. v. Complete Care Servs., L.P.*, 2000 WL 33711052 (Pa. Ct. Comm. Pl. Nov. 20, 2000):

> Courts have generally held that the gist of the action doctrine does *not* apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant. . . . .  The court recognizes that [plaintiff] must base the fraud claim in part on the contract provisions defining the monthly management fee, but the gist of [the claim] is that [defendant] made false representations about its performance with the intent to deceive [plaintiff]. The gist of the action doctrine does not bar [this claim].

*Id.* at *2 (italics in original).[19]

Moreover, Bank of America also misrepresented that Plaintiff's insurance coverage was inadequate under ***federal law.***  This misrepresentation clearly was independent of the contract. Further, by suggesting that Plaintiff needed more coverage than was actually required under the NFIA, Bank of America acted contrary to the guidance of federal regulators, who have cautioned that "lenders should avoid creating situations where a building is 'over-insured.'"  74 Fed. Reg. 35914, 35936 (July 21, 2009).  Violation of this "social policy" provides a further basis for extra-contractual liability.  *See Hofstetter II*, 2010 WL 4606478, at *13; *accord*, *Bohler-Uddenholm Amer., Inc.*, 247 F.3d at 105 ("The 'larger social policy' that defines [plaintiff's] claim is the policy requiring fair dealing"); *NutriSystem*, 2004 WL 2646598, at *6 ("The claims arise from duties imposed as a matter of social policy, not from duties imposed by the franchise agreements.").

## IV.   Plaintiff Also Has Stated Valid Contract-Based Claims

In addition to misrepresenting Plaintiff's flood insurance obligations, Bank of America also breached its contract with Plaintiff by charging him for unauthorized force-placed flood insurance coverage.  As explained *supra* at 9-12, the coverage that Bank of America obtained at Plaintiff's expense exceeded the amount authorized under both his flood hazard notice and paragraph 4 of the mortgage agreement.  Accordingly, Bank of America had no right to force-place this level of coverage, and breached the mortgage agreement by doing so.

Moreover, even if the underlying mortgage documents did not expressly limit the amount of flood insurance coverage that Plaintiff was obligated to maintain on the property, and instead

---

[19] The case law cited by Bank of America is not to the contrary, and recognizes that "it is possible that a breach of contract also gives rise to an actionable tort[.]"  *See Etoll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2008) (cited in Defs' Memo at 12 n.9).

gave Bank of America the discretion to determine what level of coverage was adequate, Bank of America was obligated to exercise this discretion in good faith.  "Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000); *see also Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992).   Examples of bad faith that violate this duty include "evasion of the spirit of the bargain,  . . . ***abuse of a power to specify terms***, and interference with or failure to cooperate in the other party's performance." *Temple Univ. Hosp., Inc. v. Group Health, Inc.*, 2006 WL 146246, at *5 (E.D.Pa. Jan. 12, 2006) (emphasis added) (*quoting Somers*, 613 A.2d at 1213).   In particular, "[u]ndisclosed, inflated charges . . . may be an abuse of a power to specify terms." *Id.* (internal quotation marks omitted).

Although Bank of America argues that the duty of good faith and fair dealing does not apply to the lender-borrower relationship, the Third Circuit has held otherwise:

> A borrower of money, especially the owner of a residential property mortgaged to a lending institution, may reasonably expect that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken by the lender.

*In re Smith*, 866 F.2d at 584; *see also CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. Ct. 1999) (declining to dismiss good faith and fair dealing claim against bank where bank's actions were inconsistent with parties' prior course of dealing).   In fact, the Third Circuit has specifically held that "imposing additional and unnecessary costs and expenses" on a borrower is an "unfair practice" that violates this duty.  *In re Smith*, 866 F.2d at 584-585.   Accordingly, Bank of America breached its duty of good faith and fair dealing by purchasing more flood insurance than was necessary to protect its financial investment in the property and comply with federal law.  *See Hofstetter II*, 2010 WL 406478, at *13 (plaintiff stated valid claim

that Chase engaged in "unfair" business practices by force-purchasing flood insurance in excess of plaintiff's credit line and federal requirements).

Instead of addressing this case law, Bank of America focuses on the largely academic question of whether Plaintiff's claim for breach of the covenant of good faith and fair dealing should be treated as a separate claim, or merged with Plaintiff's breach of contract claim. *See Defs' Memo at 10.*  In this case, it was appropriate to assert the two claims separately because Plaintiff's breach of contract claim focuses on the express terms of the contract relating to the amount of flood insurance that was required (*Complaint, ¶¶ 69-70*), whereas his claim for breach of the implied covenant of good faith and fair dealing alleges that Bank of America abused its purported discretionary authority under the hazard insurance clause (*Complaint, ¶ 63(3)*).  *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000) (test for whether an implied duty of good faith and fair dealing claim may be maintained is whether the allegations of bad faith are "identical to" a claim for relief under an established cause of action). However, even if it would have been more appropriate to lump the two claims together, the covenant of good faith and fair dealing still "supplements [the] cause of action for breach of contract."  *Frey v. Grumbine's RV*, 2010 WL 4718750, at *11 (M.D. Pa. Nov. 15, 2010). Accordingly, the Court should deny Bank of America's motion to dismiss the claim and treat it as a corollary basis for liability. *See id.* at *12 n.5.[20]

---

[20] In the alternative, Plaintiff should be allowed to formally incorporate his allegations (in Count 4) relating to breach of the implied covenant of good faith and fair dealing into his breach of contract claim (in Count 5).  *See Excelsior Ins. Co. v. Incredibly Edible Delites*, 2009 WL 5092613, at *4 (E.D. Pa. Dec. 17, 2009) ("[Claimants] will be permitted to allege that the conduct underlying their breach of duty of good faith claim supports their breach of conduct or statutory bad faith act claim.").  However, this would be an unnecessary formality, as Count 5 already "alleges and incorporates by reference the allegations in the preceding paragraphs." *Complaint, ¶ 67.*

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court deny Defendants'

motion in its entirety.

Respectfully submitted,


Dated:  December 30, 2010                    NICHOLS KASTER, PLLP

/s/        Kai Richter
Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice*


CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES