**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD M. WULF, JR., as an individual and as a representative of the classes,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, L.P.,<br><br>    Defendants. | Case No.:  2:10-cv-05176-MAM |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND
THE COMPLAINT AND ADD A SECOND NAMED PLAINTIFF**

---

NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice*


CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES

April 29, 2011

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 2

   I.  Procedural Background ................................................................................ 2

   II.  Factual Background .................................................................................... 3

      A.  Richard Wulf ...................................................................................... 3

      B.  Karyl Resnick ..................................................................................... 5

   III. Legal Claims ............................................................................................ 7

ARGUMENT ....................................................................................................... 7

   I.      Leave to Amend the Complaint Should Be Freely Granted under Rule 15 ........... 7

      A.  The Motion Is Timely ......................................................................... 8

      B.  The Motion is Brought in Good Faith ................................................. 8

      C.  Bank of America Will Not Be Prejudiced .......................................... 9

      D.  The Amended Claims Are Not Futile ................................................ 10

   II.     The Addition of Resnick as a Named Plaintiff Is Also Appropriate under
       Rule 20 .................................................................................................... 11

      A.  Resnick Asserts Identical Legal Claims and Raises Common Questions of
        Fact and Law ..................................................................................... 11

      B.  Resnick's Claims Arise Out of the Same Series of Transactions and
        Occurrences ....................................................................................... 13

CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

**STATUTES**

15 U.S.C. § 1647(c) ............................................................................10

42 U.S.C. § 4012a(b)(1) ......................................................................3

**REGULATIONS & RULES**

12 C.F.R. § 226.5b(f)(3) ....................................................................10

12 C.F.R. pt. 226, Supp. I, § 5b(f)(3), cmt. 1 ..................................10

24 C.F.R.§ 203.16a(c) .........................................................................4

Fed. R. Civ. P. 15(a) ...........................................................................7

Fed. R. Civ. P. 20(a) .................................................................11, 13, 14

Fed. R. Civ. P. 23(d) .........................................................................11

**CASES**                                                              Page(s)

*Carye v. Long Beach Mort. Co.*, 470 F. Supp. 2d 3 (D.Mass. 2007) .............14

*Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) ...............7, 8, 10

*Foman v. Davis*, 371 U.S. 178 (1962) ...............................................8

*Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009) ................................11

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous.*, 663 F.2d 419 (3d Cir. 1981) ...........8, 9

*Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611 (4th Cir. 2001) ...........13

*Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900 (N.D.Cal. Mar. 31, 2011) ....................................1, 9

*Hofstetter v. Chase Home Finance, LLC*, 2010 WL 3259773 (N.D.Cal. Aug. 16, 2010) ...........5, 6

*Hofstetter v. Chase Home Finance, LLC*, -- F. Supp. 2d --, 2010 WL 4606478 (N.D.Cal. Oct. 29, 2010) ....................................6, 7, 10

*Kendra v. City of Philadelphia*, 454 F. Supp. 652 (E.D.Pa. 1978) ...........11, 13

*King v. Pepsi Cola Metropolitan Bottling Co.*, 86 F.R.D. 4 (E.D.Pa. 1979) ...........13

*Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142 (E.D.Pa. 2001) ...........11, 13

*Moore v. Comfed Sav. Bank*, 908 F.2d 834 (11th Cir. 1990) ...........13

*Poff v. Gen. Elec. Co.*, 1990 WL 69106 (E.D.Pa. May 21, 1990) ...........11

*Scott v. Fairbanks Capital Corp.*, 284 F. Supp.2d 880 (S.D.Ohio 2003) ...........11, 14

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ...........11

**OTHER SECONDARY SOURCES**

Charles Alan Wright et al., 7 FEDERAL PRACTICE & PROCEDURE § 1653 (3d ed. 2001) ...........11

## INTRODUCTION

This putative class action lawsuit challenges Bank of America's practice of forcing customers with mortgage loans and home equity lines of credit to over-insure their property, in excess of federal flood insurance requirements, in excess of the amount required under their mortgage agreements, and in excess of the amount of funds extended to them. The Magistrate already has determined that Plaintiff Richard Wulf (a mortgage loan borrower) has asserted valid claims against Bank of America under the Truth-in-Lending Act ("TILA") and under his mortgage contract. Plaintiff now seeks to amend his Complaint to add a second borrower with a home equity line of credit, Karyl Resnick, as a named Plaintiff.[1]

Resnick asserts the same legal claims based on the same unlawful practices, and there is no reason why she should not be allowed to be a part of this suit. From day one, the proposed class definitions have included borrowers with both mortgage loans and home equity lines (because Bank of America's flood insurance requirements are the same for each), and it is appropriate that there be a named class representative for each category. In a similar case involving Chase's flood insurance requirements, the court recently certified two nationwide classes of Chase home equity line borrowers, based on the same TILA claim, and Bank of America's home equity line borrowers should have the same opportunity to seek relief in this case. *See Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2011 WL 1225900 (N.D.Cal. Mar. 31, 2011) ("*Hofstetter III*"). At this early stage of the proceedings (prior to discovery or any scheduling order), Bank of America will not be prejudiced by the proposed amendments, and Resnick's claims clearly have merit. Accordingly, Wulf and Resnick respectfully request that the Court grant this motion.

---

[1] Resnick joins this motion.

1

## BACKGROUND

### I.      Procedural Background

Plaintiff Richard Wulf ("Wulf") filed this putative class action lawsuit against Defendants Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC Servicing") (collectively, "Bank of America") on October 1, 2010.  *ECF No. 1.*  In his Complaint, Wulf alleged that Bank of America unlawfully required him and other borrowers with mortgage loans and home equity lines of credit to maintain excessive and unnecessary flood insurance, in amounts greater than required by federal law, greater than the amount of funds extended by Bank of America, and contrary to the amounts agreed upon in the relevant loan and mortgage documents.  *Id., ¶ 1.*  Based on these allegations, Wulf asserted claims against Bank of America for (1) violation of the federal Truth-in-Lending Act ("TILA"); (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PAUTP-CPL") (3) fraud; (4) breach of the implied covenant of good faith and fair dealing; and (5) breach of contract.  *Id., Counts 1-5.*

On December 3, 2010, Bank of America filed a motion to dismiss Wulf's Complaint (*ECF No. 13*), and the motion was referred to The Honorable Elizabeth T. Hey for a Report and Recommendation (*ECF No. 18*).  Following briefing on the motion, Magistrate Judge Hey issued a Report and Recommendation on April 15, 2011, ruling that Wulf stated valid TILA and contract-based claims,[2] but dismissed his fraud and PAUTP-CPL claims under the "economic loss" doctrine.  *ECF No. 29.*

Consistent with this ruling, Wulf seeks leave to file a First Amended Complaint ("FAC") dropping the fraud and PAUTP-CPL claims, and also adding a second borrower, Karyl Resnick,

---

[2] Magistrate Judge Hey ruled that Wulf's breach of contract and covenant of good faith and fair dealing claims should be consolidated into a single claim.  *ECF No. 29 at 13.*

as a named Plaintiff. *See Motion, Ex. 1.* As of the date of this motion, no scheduling order has been entered, and the parties have not yet exchanged their initial disclosures or taken any discovery. *Richter Decl., ¶¶ 2-3.* At the direction of the Court, discovery was stayed pending the outcome of Defendants' motion to dismiss. *Id., ¶ 2.*

## II.   Factual Background

Wulf is a mortgage loan borrower (*FAC, ¶ 12*), and Resnick is a home equity line borrower (*id., ¶ 24*). However, both of them allege that they were required to maintain excessive amounts of flood insurance by Bank of America, and both of them assert the same claims against Bank of America under the TILA and their mortgage agreements. *See FAC (Counts 1 & 2).*

### A.   Richard Wulf

On July 28, 2009, Wulf obtained a mortgage loan from Fulton Bank in the amount of $108,007. *FAC, ¶ 12.* As a condition precedent to obtaining this mortgage loan, Wulf was required to sign a notice acknowledging that his home was located in a Special Hazard Flood Area ("SFHA"), and that flood insurance was mandatory under federal law. *Id., ¶ 13.* Consistent with the National Flood Insurance Act ("NFIA"), this notice stated that the "flood insurance purchased must cover the ***lowest of***: (1) ***the outstanding principal balance of the loan(s)***; or (2) the maximum amount of coverage allowed for the type of building under the NFIP [$250,000]; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan." *Id., ¶ 14* (emphasis added); *accord*, 42 U.S.C. § 4012a(b)(1).

Wulf's Mortgage incorporated this flood insurance requirement. *Id., ¶ 15.* Under the terms of his Mortgage, Wulf is required to insure his property "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD"). *Id.* HUD's guidelines, in turn, provide as follows:

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

*Id.*; *accord*, 24 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . . in an amount at least equal to . . . the outstanding balance of the mortgage").

Pursuant to the terms of his mortgage and federal requirements, Wulf obtained flood insurance coverage in the amount of $110,000 upon origination of his mortgage, at a premium cost of $1,016. *Id., ¶ 16.* This amount of coverage was sufficient to cover his principal balance, and was deemed adequate by his lender at that time. *Id.* However, after Bank of America acquired Wulf's mortgage from Fulton Bank,[3] it sent him a form letter on July 29, 2010, stating that his flood insurance coverage was "not adequate" under federal law and/or his mortgage, and further stating that he was required to increase his flood insurance coverage by $103,703 (from $110,000 to more than $213,000). *Id., ¶¶ 17-18.* This form letter also stated:

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property).

*Id., ¶ 18.* Contrary to the terms of Wulf's mortgage and federal law, this form letter did not provide Wulf with a third option to maintain flood insurance in the amount of his principal balance. *Id.*

In the same form letter, Bank of America further informed Wulf that if he did not obtain the additional coverage demanded by Bank of America by September 16, 2010, (1) BAC Servicing would purchase such additional coverage for him (at his expense) "through agencies that are affiliates of Bank of America, N.A.", (2) "Bank of America, N.A. and its affiliates may

---

[3] Bank of America acquired Wulf's mortgage in September of 2009. *Id., ¶ 17.*

receive a commission or other compensation in connection with obtaining this coverage", and (3) the "premium may be more expensive and will likely provide less coverage" than insurance he could obtain by himself. *Id., ¶ 21*. Bank of America also suggested that Wulf contact BOA's affiliate, Banc of America Insurance Services, Inc., to purchase the additional insurance and avoid having the insurance force-placed upon him. *Id.*

On August 27, 2010, Wulf obtained additional flood insurance coverage as requested by Bank of America, at an additional cost of $332 per year. *Id., ¶ 22*. However, on September 21, 2010, Bank of America sent Wulf a Notice of Force-Placement, indicating that BAC Servicing had purchased $103,703 in additional flood insurance coverage for him anyway, at his expense. *Id., ¶ 23*. This Notice of Force Placement acknowledged that "[w]e understand that you do have some flood insurance on the Property," but claimed that "based on our records, it is not adequate." *Id.*

**B.    Karyl Resnick**

Plaintiff Karyl Resnick has experienced the same problems with Bank of America. On April 14, 2005, Resnick entered into a Home Equity Line of Credit Agreement ("HELOC Agreement") with "Fleet National Bank, a Bank of America Company," which was secured by a mortgage on her property.[4] *Id., ¶¶ 24-25*. Under the terms of this HELOC Agreement, her maximum available credit (also known as Maximum Principal Sum) is $75,000. *Id., ¶ 24*.

Because Resnick's property falls within a SFHA, federal law requires flood insurance for her property in an amount sufficient to cover "***the total amount of the line***, the value of the improved property or the maximum amount of flood insurance coverage available, ***whichever is less***." *Id., ¶ 26* (emphasis added); *accord*, *Hofstetter v. Chase Home Finance, LLC*, 2010 WL

---

[4] Resnick does not have any other mortgages or liens on the property. *Id., ¶ 25*.

3259773, at *7-10 (N.D.Cal. Aug. 16, 2010) ("*Hofstetter I*"); *Hofstetter v. Chase Home Finance, LLC*, -- F. Supp. 2d --, 2010 WL 4606478, at *9-10 (N.D.Cal. Oct. 29, 2010) ("*Hofstetter II*"). Accordingly, Resnick was required to maintain $75,000 worth of flood insurance on the property upon opening her credit line. *Id.*

This amount of coverage fully satisfied federal flood insurance requirements, and also fulfilled Resnick's coverage requirements under the terms of her mortgage. *Id., ¶ 27.* The pertinent provision of Resnick's mortgage provides:

> **4.     Hazard and Flood Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require.  Borrower shall maintain coverage in an amount equal to the ***smallest of***: (a) the amount of any obligation having priority over this Mortgage, plus the ***Maximum Principal Sum***; or (b) the maximum insurable value of the Property . . . ; or (c) ***such amount as may be required by applicable law***.  If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

*Id., ¶ 27* (emphasis added).

Consistent with federal law and the terms of her mortgage, Resnick has continuously maintained flood insurance on her property in an amount sufficient to cover her Maximum Principal Sum (total available credit). *Id., ¶ 28.*  However, on May 3, 2010, Bank of America sent Resnick an "Insurance Deficiency Notice," and later sent her a Notice of Flood Insurance Coverage on June 14, 2010, claiming that "additional flood insurance is required" for her property. *Id., ¶¶ 28-29.*  Bank of America's Notice of Flood Insurance Coverage imposed the same flood insurance requirements on Resnick that it imposed on Wulf, and stated:

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property

(typically based on the amount of hazard insurance we understand you have purchased for the property).

*Id., ¶ 29.*

This notice also indicated that Bank of America had force-placed additional flood insurance coverage on Resnick's property in the amount of $175,000 (bringing her total coverage amount to $250,000), and further indicated that Bank of America would charge her $459.16 for the cost of this additional insurance. *Id., ¶ 30.* In this notice, Bank of America also noted that "our licensed affiliate insurance agency may have received a commission for placing this insurance." *Id.*

## III.   Legal Claims

Based on the above facts, Wulf and Resnick assert that Bank of America breached their mortgage contracts and violated the TILA by imposing unauthorized flood insurance requirements on them and by force-placing unauthorized amounts of flood insurance on their property, without their consent. *FAC (Counts 1-2).* As noted above, Magistrate Judge Hey previously ruled that Wulf's TILA and contract-based claims are valid. *See ECF No. 29.* Although her Report and Recommendation does not specifically address Resnick's claims, her decision was based, in part, on a recent case upholding a similar TILA claim involving unauthorized flood insurance and Chase home-equity line customers. *ECF No. 29 at 21-22* (citing *Hofstetter II*, 2010 WL 4606478, at *3, 8, 10).

## ARGUMENT

## I.   Leave to Amend the Complaint Should Be Freely Granted under Rule 15

Rule 15(a) of the Federal Rules of Civil Procedure allows parties to amend their pleadings with leave of court, and provides that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir.

7

1990) ("[W]e have held consistently that leave to amend should be granted freely.") (citations omitted). This liberal standard must be heeded:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous.*, 663 F.2d 419, 425 (3d Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Accordingly, leave to amend should be granted in the absence of any undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Id.* None of these extenuating factors are present here. Therefore, there is no reason to depart from the general rule allowing amendment of the pleadings.

## A.  The Motion Is Timely

The motion to amend is timely. This is the first time that Plaintiff has sought to amend the pleadings, and his motion is being brought at the outset of the case. At this stage of the proceedings, the Court has not yet issued a scheduling order, and the parties have not exchanged their initial disclosures or engaged in any discovery. The focus of the litigation up to this point has centered entirely on Bank of America's motion to dismiss, which was denied (in part) by Magistrate Judge Hey.

## B.  The Motion Is Brought in Good Faith

The motion to amend is also brought in good faith. The amended claims are limited to the claims that the Magistrate Judge upheld in her Report and Recommendation, and the FAC does not assert any new claims or legal theories.

Further, it is appropriate to add a named plaintiff who has a home equity line of credit with Bank of America, to ensure that all borrowers in the proposed classes are adequately

represented.  The proposed class definitions (and original class definitions) include customers with both mortgage loans and home equity lines of credit.  Accordingly, it makes sense to have a class representative for each of these customer categories.  In fact, the court in the *Hofstetter* flood insurance litigation recently held that it was ***essential*** to have a class representative for both categories of customers.  *See Hofstetter III*, 2011 WL 1225900, at *12 (N.D.Cal. Mar. 31, 2011) (certifying various classes of home equity line borrowers who were required to maintain excessive flood insurance by Chase, but declining to include mortgage loan borrowers in these classes because neither of the named plaintiffs were mortgage loan borrowers).  The current motion to amend is a logical and prudent response to this ruling.

### C.  Bank of America Will Not Be Prejudiced

Bank of America will not be prejudiced by the proposed amendments.  From the inception of this lawsuit, Bank of America has been on notice that the claims in this case involve both mortgage loan customers and home-equity line customers.  *See ECF No. 1, ¶ 1* ("Plaintiff and the Putative Class members currently have or formerly had loans or lines of credit with Defendants . . .").  Therefore, the addition of Resnick as a named plaintiff will not materially change the scope of the litigation.[5]  Only her status has changed (from absent TILA class member to named class representative).

Moreover, even if the addition of Resnick as a named plaintiff did fundamentally change the scope of the litigation (which it does not), Bank of America will have ample opportunity to defend itself against her claims.  *See Heyl*, 663 F.2d at 426 ("A mere claim of prejudice is not sufficient; there must be some showing that [defendant] was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . .

---

[5] Indeed, the claims in the FAC are actually ***narrower*** than the claims in the original Complaint, because the fraud and PAUTP-CPL claims were omitted in response to the Magistrate's ruling.

amendments been timely."). At this early stage, discovery has not even begun, much less concluded. Moreover, the proposed amended complaint is based upon facts and circumstances which do not differ significantly from those underlying the original Complaint, and "[t]he evidence required to meet these new allegations is substantially similar to that which was originally required." *Dole*, 921 F.2d at 488.

### D. The Amended Claims Are Not Futile

Finally, the amended claims are far from futile. In fact, Magistrate Judge Hey previously ruled that Wulf's TILA and contract-based claims are valid, and should be allowed to proceed.

Given the factual similarities between Wulf's situation and Resnick's situation, there is no reason why she should not be allowed to assert the same claims. In *Hofstetter II*, the court held that Chase violated the TILA by increasing its flood insurance requirements for home equity line borrowers (such as Resnick) after-the-fact. *Hofstetter II*, 2010 WL 4606478, at *10.[6] The same result should apply here. In fact, the Magistrate previously ruled that the same result *does* apply here, regardless of whether the affected borrowers have mortgage loans or lines of credit:

> In Hofstetter II, the plaintiffs obtained home equity lines of credit from the defendant secured by properties located in flood zones. With respect to one of the plaintiffs, much like the facts of our case, he had obtained flood insurance coverage in the amount of his credit line. He was later advised that he was required to increase his coverage to $250,000. Id. at *3. The court found that the NFIA required flood coverage of $100,000 the amount of his credit line, and that the lender's requirement of additional coverage violated TILA. Id. at *10.
>
> Defendants argue that Hofstetter II is inapposite because the loan was an open-ended transaction and the regulations relied upon by the court have no corollary in the realm of closed-end credit transactions. . . . However, considering the underlying purpose of TILA and other cases involving closed-end credit

---

[6] Under TILA and its accompanying regulations, it is unlawful for a lender to change the terms of a home equity credit plan. 15 U.S.C. § 1647(c); 12 C.F.R. § 226.5b(f)(3). This "change of terms" prohibition encompasses *any* term, not just those terms (like interest rates) that are required to be disclosed under TILA. *ECF No. 110 at 12*; *accord*, 12 C.F.R. pt. 226, Supp. I, § 5b(f)(3), cmt. 1.

transactions requiring disclosures by the lender, I believe dismissal of the TILA claim at this stage is inappropriate.

*ECF No. 29 at 21-22.*

## II.   The Addition of Resnick as a Named Plaintiff Is Also Appropriate under Rule 20

The addition of Resnick as a named plaintiff is also appropriate under Rule 20(a), which addresses joinder of parties.[7]   "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"   *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Thus, permissive joinder is granted very liberally, as it serves the convenience of the parties and the court.   *Poff v. Gen. Elec. Co.*, 1990 WL 69106, at *1 (E.D.Pa. May 21, 1990); *Kendra v. City of Philadelphia*, 454 F. Supp. 652, 661 (E.D.Pa. 1978).

### A.   Resnick Asserts Identical Legal Claims and Raises Common Questions of Fact and Law

Under Rule 20(a), courts consider whether there is a question of law or fact that is common to both of the named plaintiffs.   *See* Fed. R. Civ. P. 20(a)(1)(B) ("Persons may join in one action as plaintiffs if . . . any question of law or fact common to all plaintiffs will arise in the action.").   This common question requirement is usually easily met.   *Scott v. Fairbanks Capital Corp.*, 284 F. Supp.2d 880, 888 (S.D.Ohio 2003).   The applicable test "does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law or fact."   Charles Alan Wright et al., 7 FEDERAL PRACTICE & PROCEDURE § 1653 at 413 (3d ed. 2001) (emphasis added); *accord*, *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D.Pa. 2001).

---

[7] In addition, Rule 23 further supports adding Resnick as a party, as it provides that the Court may give class members the opportunity "to intervene and present claims or defenses, or to otherwise come into the action[.]"  Fed. R. Civ. P. 23(d).

Here, Wulf and Resnick raise not just one, but multiple, common questions of law and fact, including:

a. Whether federal law requires Defendants' customers to purchase and/or maintain flood insurance in amounts greater than necessary to secure the amount of funds extended under a home loan or line of credit;

b. Whether Defendants have a pervasive policy and practice of misrepresenting to their customers that federal law requires flood insurance or additional flood insurance on loans or lines of credit for which flood insurance or additional flood insurance is not required by law;

c. Whether the mortgage documents relied upon by Defendants clearly, conspicuously, adequately, and meaningfully disclose the amount of flood insurance that is required as a condition of credit, and authorize Defendants to demand and/or force-place flood insurance in amounts greater than required by federal law and greater than necessary to secure the amount of funds extended;

d. Whether Defendants' standard flood insurance notice letters are false, deceptive, and/or misleading;

e. Whether BOA violated the TILA by failing to accurately disclose customers' flood insurance requirements, by changing its flood insurance requirements without proper notice and consent, and/or by failing to make proper finance charge disclosures or other disclosures in connection with flood insurance;

f. Whether Defendants owe their customers a duty of good faith and fair dealing and/or have an obligation to avoid creating situations where properties are over-insured, and if so, whether Defendants breached this duty and/or obligation by, *inter alia*, demanding flood insurance in amounts greater than necessary to secure the amount of funds extended and greater than required by federal law;

g. Whether Defendants breached their mortgage agreements with customers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed in such mortgage agreements;

h. The appropriateness and form of any equitable relief reversing charges for excessive flood insurance coverage, allowing customers to close loans or credit lines without first paying premiums for flood insurance that were not necessary or required by law, ordering Defendants to cease and desist from such conduct in the future, or any other declaratory or injunctive relief;

      i.   The appropriateness and proper measure of monetary and other damages sustained by the Putative Classes; and

      j.   The appropriateness and proper measure of any penalties, fines, or other remedies.

*FAC, ¶ 37.*  In light of these express allegations of common questions, the common question requirement is more than satisfied.

### B. Resnick's Claims Arise Out of the Same Series of Transactions and Occurrences

Under Rule 20(a), courts also consider whether the rights asserted by the new and existing parties arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(1)(A).  This standard is applied flexibly.  "The 'transaction or occurrence' language of Rule 20 has been interpreted to 'permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.  Absolute identity of all events is unnecessary.'"  *Kendra*, 454 F. Supp. at 661; *accord*, *Miller*, 202 F.R.D. at 144 (applicable test is whether there is a "logical relationship")

For purposes of the rule, claims are sufficiently related if they arise from the same general policy, or pattern or practice. *Miller*, 202 F.R.D. at 144; *see also King v. Pepsi Cola Metropolitan Bottling Co.*, 86 F.R.D. 4, 6 (E.D.Pa. 1979) (claims fall within the same series of transactions where "[e]ach plaintiff alleges that that he is the victim of a pervasive corporate policy").  That is precisely the situation here.  Wulf and Resnick both challenge Defendants' policy of requiring excessive amounts of flood insurance, and both of them assert identical legal claims.  Accordingly, their claims arise out of the same transaction or occurrence. *See, e.g., Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (joinder allowed where all the transactions involved similar loans and the new plaintiffs alleged the same or similar types of violations committed by bank); *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 839 (11th Cir. 1990) ("Here, it is plain from the record that all of these transactions arose out of a

13

series of transactions or occurrences initiated by [the] Bank, and that all of the claims involved the same question of law and fact"); *Carye v. Long Beach Mort. Co.*, 470 F. Supp. 2d 3, 8 (D.Mass. 2007) (holding that additional borrowers could be joined as named plaintiffs in putative class action against mortgage company; "even though the parties signed different loans, a conscious parallelism in the conduct of [defendant] appears to exist"); *Scott*, 284 F. Supp. 2d at 888-889 (S.D.Ohio 2003) (plaintiffs' claims held sufficiently similar to one another for purposes of Rule 20(a), where plaintiffs alleged that they "both were subjected to the same types of fees" in violation of the same statute).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court allow the proposed amendments, and permit Resnick to join the lawsuit as a named plaintiff.

Respectfully submitted,

Dated:  April 29, 2011

NICHOLS KASTER, PLLP

/s/        Kai Richter
Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice*

CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES