BALLARD SPAHR LLP
Martin C. Bryce, Jr.
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Ph: 215/864-8238

GOODWIN PROCTER LLP
John C. Englander (*pro hac vice*)
Matthew G. Lindenbaum (*pro hac vice*)
Mark T. Knights (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD M. WULF, JR., as an individual and as a representative of the classes, | |
| Plaintiff, | Civil Action No. 2:10-cv-05176-MAM |
| v. | **ORAL ARGUMENT REQUESTED** |
| BANK OF AMERICA, N.A.; and BAC HOME LOANS SERVICING, L.P., | |
| Defendants. | |

**DEFENDANTS BANK OF AMERICA, N.A. AND BAC HOME LOANS SERVICING, L.P.'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING MOTION TO DISMISS**

Pursuant to Local Rule 72.1, Defendants Bank of America, N.A. ("BANA") and BAC Home Loans Servicing, LP ("BHLS") (collectively, "Defendants") hereby object to Sections III.A, III.B, and III.D of the Report and Recommendation of the United States Magistrate Judge ("Report," Doc. No. 29) regarding Defendants' Motion to Dismiss.

This is a purported class action, in which Plaintiff claims that Defendants violated Plaintiff's mortgage contract and various other laws when Defendants required Plaintiff to increase the flood insurance coverage on his mortgage, so that the insurance would cover the replacement value of his home.  On December 3, 2010, Defendants filed a Motion to Dismiss Plaintiff's complaint in its entirety.  As grounds for that Motion, Defendants argued that:

1.  Plaintiff's breach of contract claim must fail because Plaintiff's mortgage (the contract at issue) expressly permits Defendants to determine the amount of flood insurance Plaintiff must carry;

2.  Plaintiff's claim for breach of the covenant of good faith and fair dealing must fail because that claim is duplicative of Plaintiff's breach of contract claim;

3.  Plaintiff's claims for fraud and violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") are barred by the economic loss doctrine and are not pleaded with particularity; and

4.  Plaintiff's Truth in Lending Act ("TILA") claim must fail because under TILA's regulations, Plaintiff's flood insurance premiums were specifically exempted from the "finance charge."

*See generally* Memo. in Supp. of Mot. to Dismiss (Doc. No. 13-2).

On April 15, 2011, the Magistrate Judge issued her Report on Defendants' motion, recommending that the motion be granted in part and denied in part.  Specifically, the Report

agreed with (2) and (3), concluding that Plaintiffs' fraud and UTPCPL claims were barred by the economic loss doctrine and that the claim for breach of the covenant of good faith and fair dealing should be dismissed as duplicative of the breach of contract claim (though the Report recommended that parts of the latter claim be merged with the breach of contract claim).  With respect to (1), the Report concluded that "both the mortgage and the [National Flood Insurance Act] are sufficiently ambiguous to make Plaintiff's understanding plausible," and that Plaintiff's breach of contract claim should be permitted to survive; and with respect to (4), the Report concluded that the TILA exemption for flood insurance did not apply because Defendants "purchase[d] force-placed insurance for Plaintiff's property and charged that cost of the policy to Plaintiff," and that "the underlying purpose of TILA" would be served by permitting Plaintiff's TILA claim to proceed.

The Report's recommendations with respect to (1) and (4) are wrong as a matter of law. Plaintiff's breach of contract and TILA claims must be dismissed for the reasons set forth in Defendants' previous briefs.[1]  *See* Doc. Nos. 13-2 and 28.  Plaintiff's mortgage is not ambiguous, and its plain language grants discretion to Defendants to set the amount of flood insurance coverage Plaintiff must carry, as long as Plaintiff's coverage at least meets the minimum required by federal law.  In addition, under TILA's comprehensive implementing regulations, flood insurance premiums are not to be included in the "finance charge" where, as here, a borrower may purchase the insurance from an insurer of his or her choice and is notified of this ability.  Defendants submit this brief to point out specifically the errors in the Magistrate Judge's reasoning on each of these two arguments.

---

[1] Defendants' arguments concerning these claims are made at length in Defendants' previous briefing, and Defendants refer the Court to that briefing for their complete arguments.  In this Objection, Defendants address specifically the errors made by the Magistrate Judge in her Report and Recommendation.

## ARGUMENT

In recommending that the Motion be denied as to Plaintiff's breach of contract and TILA claims, the Report makes two clear errors of law.  Notably, each of those errors involves a legal question that reaches well beyond the dispute between the parties before this Court.  First, the Report incorrectly construes the plain language of Plaintiff's FHA mortgage, which requires him to maintain flood insurance "in the amounts and for the periods" required by his lender.[2]  The mortgage contract surely does not, as Plaintiff contends, establish that the minimum flood insurance required by federal law is the <u>maximum</u> coverage that the lender can require.  Second, the Report misinterprets TILA, which contains no requirement that a lender include flood insurance costs in the "finance charge" under the circumstances presented in this case.  For these reasons, the Court should not adopt Sections III.A, III.B, and III.D of the Magistrate's Report, and should dismiss Plaintiff's claims in their entirety.

**I.**     **<u>The Magistrate Judge's Report Contradicts the Plain Language of Plaintiff's Mortgage, and the Breach of Contract Claims Should Be Dismissed</u>.**

The crux of Plaintiff's breach of contract claims[3] is that under his mortgage, he could not be required to purchase "flood insurance in an amount greater than the unpaid principal balance on the loan."  Complaint (Doc. No. 1) ¶ 69.  The mortgage provides, however, that Plaintiff must "insure all improvements on the Property . . . against **any hazards, casualties, and contingencies**, including fire, for which Lender requires insurance . . . **in the amounts and for**

---

[2] Because the mortgage is unambiguous, its correct reading is a matter of law which should be resolved on a motion to dismiss.  *See Freedom Properties, LP v. Lansdale Warehouse Co., Inc.*, No. 06-5469, 2007 WL 2254422, *3 (E.D. Pa. Aug. 2, 2007).

[3] In referring to breach of contract "claims," Defendants here refer to the express breach of contract claim in Count V of the Complaint, which is discussed in section III.A of the Report, and any remaining allegations from the claim for breach of the covenant of good faith and fair dealing in Count IV, which section III.B of the Report recommended be construed as a breach of contract claim and merged with Count V.  *See* Report at 12-13. Accordingly, Defendants object to both section III.A and that part of section III.B permitting any part of Count IV to survive.

**the periods that Lender requires.**"  *See* Mortgage (Doc. No. 13-3) at 4, ¶ 4 (emphasis added).

In concluding that Plaintiff's reading of the mortgage is "plausible," Report at 11, the Magistrate

Judge stated, "[i]t is far from clear that this sentence refers to flood insurance."  Report at 8.  But

the construction of this FHA mortgage is a question of law, and there is no reasonable reading of

this sentence that excludes flood insurance.

The sentence refers to insurance against "**any** hazards, casualties, and contingencies."  To

read the sentence as excluding flood insurance, one would have to conclude that a flood is not a

hazard, casualty or contingency.  Such would be contrary to plain meaning.  The ordinary

meaning of "hazard" – "a potential risk or danger" – unquestionably encompasses floods.  *Cf.*

Merriam-Webster's Collegiate Dictionary 572 (11th ed. 2003) (defining "hazard" as "a source of

danger" or "a chance event; accident").  Flooding also falls within the definition of a casualty or

contingency.  *See id.* at 193 (defining "casualty" as a "serious or fatal accident: disaster"); *id.* at

270 (defining "contingency" as "an event (as an emergency) that may be or is not certain to

occur").  This is precisely why the court in *Custer v. Homeside Lending* concluded that similar

language permitted the defendant lender to "force-place [flood] insurance against loss 'in such

amounts' as it might choose to require."  858 So. 2d 233, 246-47 (Ala. 2003).  Although *Custer*

is on point and was cited in Defendants' Reply Memorandum (Doc. No. 28) at pages 3-4, the

Report does not address the case or attempt to distinguish it.

The Report reads around this unambiguous language because it focuses instead on a later

sentence of the mortgage, which addresses minimum flood insurance requirements.  The entire

provision provides as follows:

> Borrower shall insure all improvements on the Property, whether now in existence
> or subsequently erected, against any hazards, casualties, and contingencies,
> including fire, for which Lender requires insurance.  This insurance shall be
> maintained in the amounts and for the periods that Lender requires.  Borrower

> shall also insure all improvements on the Property, whether now in existence or
> subsequently erected, against loss by floods to the extent required by the
> Secretary.

*See* Report at 7.  The Report apparently finds it "plausible" that the last sentence establishes a

single, one-size-fits-all coverage amount for flood insurance, which is equal to the **minimum**

amount required under federal law, and that the sentence **prohibits** the lender from requiring

greater coverage.  But reading the last sentence to impose a maximum amount of flood insurance

that Defendants may require is contrary to both plain language, and to the National Flood

Insurance Act ("NFIA") and its regulations.  Plaintiff's reading would have the last sentence

directly contradict the first sentence, which obligates Plaintiff to carry insurance "in the amounts

and for the periods that Lender requires."  It is a cardinal principle of contract interpretation,

however, that "[a] contract should be read to give effect to all its provisions and to render them

consistent with each other."  *In re H.K. Porter Co., Inc.*, 379 B.R. 272, 279 (W.D. Pa. 2007)

(citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)) (emphasis

added).

The two sentences are easily harmonized.  The first provision, requiring Plaintiff to

insure the property against any hazards for which the lender requires insurance, does not require

Plaintiff to carry any insurance against floods or other hazards – it merely reserves to Defendants

the ability to set such coverage.  The second provision, however, limits this discretion with

respect to flood insurance, by establishing a coverage floor:  Plaintiff must insure the property at

least to the amount set by the HUD Secretary.  This latter sentence does not, however, restrict

Defendants' ability – granted in the first provision – to require Plaintiff to carry flood insurance

in **greater** amounts (for example, replacement value).  To read the last sentence as **prohibiting**

the lender from requiring more than the NFIA minimum would prevent the lender from requiring

coverage in amounts that might better protect both the borrower's and the lender's interest in the property.  Such a construction has nothing to commend it as a matter of reason or policy.

The Report also errs when it concludes that the NFIA – the source of the HUD Secretary's flood insurance requirements – is "ambiguous."  Report at 11.  The NFIA itself clearly sets a **minimum** flood insurance requirement, providing that any loan on a property in a flood zone must be "covered for the term of the loan by flood insurance in an amount **at least equal to** the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less."  42 U.S.C. § 4012a(b)(1) (emphasis added).[4]  There is only one plausible interpretation of this language – that properties in flood zones must at minimum carry flood insurance equal to the lesser of (a) the outstanding principal loan balance or (b) the NFIA's $250,000 coverage limit.  *See Hayes v. Wells Fargo Home Mortg.*, No. 06-1791, 2006 WL 3193743, *4 (E.D. La. Oct. 31, 2006) ("The 'at least' language indicates that this requirement is a minimum with which the lender must comply and does not prohibit a contractual agreement whereby the lender may require coverage in an amount greater than the balance of the loan secured by the property vulnerable to flooding.").  Even if the NFIA were ambiguous, though, that is no grounds for denying Defendants' motion to dismiss – the proper interpretation of the statute is a question of law, and no amount of discovery could shed any light on the correct answer to that question.  *Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d Cir. 2001).

Finally, the Report goes far afield when it relies upon the Truth in Lending Disclosure Statement provided to Plaintiff at loan closing, which indicated that "a required condition of [the mortgage]" would be that Plaintiff carry $108,007 worth of hazard insurance coverage.  Report

---

[4] The HUD Secretary's regulations similarly provide that flood insurance must be "in an amount **at least equal to** either the outstanding balance of the mortgage . . . or the maximum amount of the NFIP insurance available with respect to the property improvements, whichever is less."  24 C.F.R. § 203.16a (emphasis added).

at 8-9; *see* Disclosure Statement (Doc. No. 13-4) at 1 ("Property hazard insurance in the amount of $108,007.00 . . . is a required condition of this loan.  Borrower may purchase this insurance from any insurance company acceptable to the lender.").  Plaintiff did not even allege or argue that the Disclosure Statement formed a part of the basis for his breach of contract claim.  Yet the Report references the Disclosure Statement as supporting the notion that Plaintiff "was required to carry only $108,007 worth of flood insurance coverage."  Report at 9.

This reading of the Disclosure Statement was legal error.  All that the Disclosure Statement says is that hazard insurance is a "required condition" of Plaintiff's loan.  Disclosure Statement at 1.  Nothing in the Disclosure Statement states or even suggests that the amount therein is the maximum amount of insurance that the lender may require.  And the Disclosure Statement itself provides in no uncertain terms, in bold capital letters at the very top of the page, that it is "**neither a contract nor a commitment to lend**."  *Id.*  Nor can it be incorporated into the mortgage itself – for a document to be incorporated into a contract under Pennsylvania law, there must be a reference to the document in the contract and a declaration that the document shall be considered a part of the contract.  *See Cable & Assocs. Ins. Agency, Inc. v. AMS Servs., Inc.*, 102 F. Appx. 234, 237 (3d Cir. 2004).  No such reference is made in Plaintiff's mortgage.

Because Plaintiff's mortgage unambiguously permits Defendants to take the exact action Plaintiff complains of, this Court should reject sections III.A and III.B of the Report and dismiss Plaintiff's claims for breach of contract.

II.      **The Magistrate Judge's Report Misinterprets the Truth in Lending Act**.

In recommending that Plaintiff's claim under TILA be permitted to survive, the Report appears to identify two separate purported violations of TILA: first, the failure to include Defendants' flood insurance premium in the TILA "finance charge," and second, the failure to provide new disclosures after Defendants allegedly "changed the terms" of Plaintiff's mortgage by requiring additional flood insurance coverage. *See* Report at 19-23.  Neither of these purported violations finds support in TILA or its implementing regulations, and both are in fact incompatible with the regulations implementing TILA.  In the absence of any textual support for these purported violations, the Magistrate Judge's interpretation of TILA to permit Plaintiff's claims to go forward is significant, as it potentially threatens to upset a carefully crafted and understood regulatory structure.

First, Defendants' flood insurance premiums were not required to be included in the finance charge under TILA.  For so-called "closed-end" credit transactions such as Plaintiff's mortgage loan,[5] Regulation Z, TILA's implementing regulation, requires creditors to disclose, among other things, the "finance charge," which may in some cases include "[p]remiums or other charges for insurance against loss of or damage to property."  *See* 12 C.F.R. §§ 226.4(b)(8), 226.18(d).  As the Report notes, though, those **insurance charges are exempted** from Regulation Z's disclosure requirements where "[t]he insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed."  12 C.F.R. § 226.4(d)(2); *see* Report at 19-20.  This exemption applies here.

As Defendants argued in their Motion to Dismiss and as quoted above, Plaintiff was told, in writing, that he had the option of obtaining the flood insurance allegedly required "from a

---

[5] There is no dispute that Plaintiff's mortgage is for a defined term and constitutes a "closed-end credit" transaction under TILA.  *See* 12 C.F.R. §§ 226.2(a)(10) & (20).

person of [his] choice." **This was not a subject of dispute between the parties**.  In his opposition to the Motion to Dismiss, Plaintiff himself never argued that he did not have notice that he could choose his flood insurer.

Though the parties themselves did not disagree on this point, the Magistrate Judge *sua sponte* concluded that this exemption did not apply because the Complaint alleged "Defendants did purchase force-placed insurance for Plaintiff's property and charged the cost of the policy to Plaintiff."  Report at 20 (citing Complaint (Doc. No. 1) ¶ 22).  This allegation has no significance, however.  The touchstone for whether TILA's exemption applies is whether the borrower is given notice that the insurance coverage "**may be** obtained from a person of the consumer's choice."  12 C.F.R. § 226.4(d)(2) (emphasis added).  The fact that the insurance coverage ultimately was – at some later date – force-placed because the consumer refused to purchase increased insurance from a carrier of his choice has no bearing on the exemption's applicability, as long as he had the option of obtaining the additional coverage himself.  Here, the Complaint itself acknowledges that Plaintiff had the option to use a carrier of his choice even when BHLS requested that Plaintiff purchase additional insurance coverage.  *See* Complaint ¶ 20 (BHLS informed Plaintiff that insurance would be force-placed "if he did not obtain the additional coverage" himself).  It is therefore beyond question that the flood insurance premiums here did not qualify as a "finance charge" subject to TILA's disclosure requirements.

Second, Defendants cannot be held liable under TILA in connection with the alleged "change in terms."  The basis on which the Report concludes that the alleged "change in terms" may give rise to liability under TILA is not clear.  The Report does not rely upon the specific language of **any** particular provision of TILA in order to reach this conclusion, instead appealing generally to "the underlying purpose of TILA."  Report at 22.  This is untenable.  TILA and

10

2173367.5

Regulation Z set forth a comprehensive regulatory framework with strict disclosure requirements, and in the absence of any specific provision requiring disclosure or prohibiting the conduct of which Plaintiffs complain, there can be no basis for liability under TILA.  *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (where statute does not provide for a private remedy, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute"); *see also Williams v. Bill Watson Ford, Inc.*, 423 F. Supp. 345, 351 (E.D. La. 1976) (declining "to manufacture a specific disclosure requirement in the absence of such a provision in" TILA because TILA's "stringent disclosure requirements . . . should not be enlarged beyond the specific terms of the Act and Federal Reserve Board regulations simply to conform to some judicial notion as to the congressional purpose and intent").  Indeed, as the Report itself notes, the only TILA regulations that require new disclosures following a change in terms "are applicable only to open-ended credit transactions," not closed-end transactions like Plaintiff's loan.[6]  Report at 22.  Though Congress and the Federal Reserve Board could have enacted parallel provisions for closed-end transactions, they did not – clearly indicating that they did not intend similar requirements to apply to those transactions.

Even assuming, though, that a "change in terms" could give rise to new or different disclosure obligations under TILA in the context of a closed-end transaction, there still is no basis for finding a violation of law here.  First, as already noted, Defendants did **not** change any terms – there was no breach of Plaintiff's mortgage by Defendants.  *See supra* Section I. Moreover, even if one could find a breach of the mortgage resulting from the additional flood insurance, that still could not give rise to liability under TILA, because Plaintiff's claim would still depend on an allegation that flood insurance costs needed to be included in some version of

---

[6] For this reason, the Report's reliance upon *Hofstetter v. Chase Home Finance, LLC*, No. 10-01313, 2010 WL 4606478 (N.D. Cal. Oct. 29, 2010) ("Hofstetter II") is misplaced.  That case dealt solely with the regulations applicable to open-ended credit transactions, and sheds no light on the regulations applicable to Plaintiff's loan.

LIBA/2173367.5

the finance charge – and the flood insurance costs involved here still are not includable because Plaintiff had the option to purchase insurance from a carrier of his choosing.

For the above reasons, the primary case upon which the Report relies in denying Defendants' motion to dismiss the TILA claim, *Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995), has no bearing on the outcome here.  In *Travis*, the lender purchased insurance against the plaintiffs' default and allegedly charged it to the plaintiffs.  *Id.* at 1228. The plaintiffs contended that this constituted a new finance charge requiring a new disclosure, and – critically – the lender "did not challenge the argument that the procurement and financing of the allegedly unauthorized insurance constituted a new credit transaction which required new disclosures." *Id.* at 1229.  There was no contention that the particular insurance at issue in that case was not a finance charge, nor did any facts suggest as much, and the *Travis* court accordingly concluded that the "[d]efendant's action involved augmenting Plaintiffs' existing finance charge with an additional finance charge" that "required new disclosures under TILA." *Id.* at 1229-30.  The outcome in *Travis* therefore **did not turn on whether the insurance was authorized under the plaintiffs' contract** – as the Report seems to suggest – but on whether the insurance costs constituted a "finance charge" subject to TILA.  Because the flood insurance premiums in this case are specifically exempted from the definition of a "finance charge," no new finance charge was added and no disclosure was required under the reasoning in *Travis*.[7]

---

[7] Notably, the *Travis* court determined that the plaintiff could premise his TILA claim upon 12 C.F.R. § 226.17(e) – a regulatory section upon which neither the Report nor Plaintiff himself relies upon or even so much as mentions. And for essentially the same reasons that *Travis* is inapplicable, two of the other cases the Report relies upon – *Bermudez v. First of America Bank Champion, N.A.*, 860 F. Supp. 580 (N.D. Ill. 1994) and *Vician v. Wells Fargo Home Mortgage*, No. 2:05-CV-144, 2006 WL 694740 (N.D. Ind. March 16, 2006) – which addressed vehicle insurance, not flood insurance for closed-end credit transcations, are inapplicable.  Whereas the exemption in 12 C.F.R. § 226.4(d)(2) directly applies here, neither the *Bermudez* nor the *Vician* court addressed this exemption, or any other exemption under TILA.

Because there is no basis in TILA for concluding that Defendants can be held liable to Plaintiff, this Court should reject section III.D of the Report and dismiss Plaintiff's TILA claim.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, and for the reasons set forth in their Motion to Dismiss and supporting memoranda, Defendants Bank of America, N.A. and BAC Home Loans Servicing, L.P. respectfully request that the Court reject Sections III.A, III.B, and III.D of the Magistrate's Report, and dismiss Plaintiff's Complaint in its entirety, with prejudice.  Defendants further request that the Court hold oral argument on their Motion to Dismiss.


Dated: May 5, 2011

BANK OF AMERICA, N.A.; and BAC
HOME LOANS SERVICING, L.P.,

By their attorneys,

/s/ John C. Englander
John C. Englander (*pro hac vice*)
Matthew G. Lindenbaum (*pro hac vice*)
Mark T. Knights (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
jenglander@goodwinprocter.com
mlindenbaum@goodwinprocter.com
mknights@goodwinprocter.com

Martin C. Bryce, Jr.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Ph: 215/864-8238
Fax: 215/864-9511
Bryce@ballardspahr.com

LIBA/2173367.5

## CERTIFICATE OF SERVICE

I, John C. Englander, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 5, 2011.

Dated:  May 5, 2011                    /s/ John C. Englander

14