**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RICHARD M. WULF, JR., as an
individual and as a representative of the
classes,

      Plaintiff,

v.

BANK OF AMERICA, N.A., and BAC
HOME LOANS SERVICING, L.P.,

      Defendants.

Case No.:  2:10-cv-05176-MAM

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

---

NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice*

CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES

May 19, 2011

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

   I. Procedural Background ................................................................................. 2

   II. Factual Background .................................................................................... 3

       A. Flood Insurance Requirements Upon Loan Origination ..................... 3

       B. Bank of America Falsely Claims that Plaintiff's Flood Insurance Is "Not Adequate" Ten Months After Acquiring the Mortgage ..................... 5

       C. Bank of America Force-Places Unnecessary and Excessive Flood Insurance ................................................................................. 6

STANDARD OF REVIEW ..................................................................................... 7

ARGUMENT .......................................................................................................... 8

   I. The Magistrate Correctly Ruled that Plaintiff Stated a Valid Contract Claim ....... 8

       A. The Magistrate's Ruling Is Consistent with the Flood Insurance Provision in the Mortgage ................................................................. 8

       B. The *Hazard* Insurance Provision in the Mortgage Does Not Apply to *Flood* Insurance ................................................................. 9

       C. Even if the Hazard Insurance Provision Applies, the Amount of Coverage Required under the Hazard Insurance Provision Is No Greater than the Amount of Coverage Required under the Flood Insurance Provision ........... 10

       D. To the Extent that the Hazard Insurance Provision Applies to Flood Insurance and Requires More Coverage than the Flood Insurance Provision, the "Conflict" Must Be Resolved in Favor of Plaintiff ........... 12

       E. Even Standing Alone, the Hazard Insurance Provision Does Not Allow Bank of America to Impose Unfair Flood Insurance Requirements on Borrowers ... 14

   II. Plaintiff Has Stated a Valid TILA Claim Against Bank of America ........... 16

A.  Bank of America Violated the TILA by Misrepresenting the Terms of the Legal Obligation Between the Parties ........................................................ 17

B.  Bank of America Violated the TILA by Failing to Provide Plaintiff with New Credit Disclosures ........................................................................................ 19

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**STATUTES**                                                                      Page(s)

15 U.S.C. § 1601(a) .......................................................................... 18, 19

28 U.S.C. § 1636(b)(1) ........................................................................... 7

42 U.S.C. § 4012a(b)(1) ......................................................................... 5

**REGULATIONS & RULES**

12 C.F.R. § 22.3 ..................................................................................... 5

12 C.F.R. § 226.17(c) ....................................................................... 17, 18

12 C.F.R. § 226.17(e) ........................................................................... 19

12 C.F.R. § 226.18 ............................................................................... 20

12 C.F.R. § 226.5(c) ............................................................................ 18

12 C.F.R. pt. 226, Supp. I, § 17(c), cmt. 2 .......................................... 19

12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1 .......................................... 19

24 C.F.R.§ 203.16a(c) ....................................................................... 4, 8

Fed. R. Civ. P. 8(a)(2) ........................................................................... 7

**CASES**

*A.G. Cullen Const., Inc. v. State Sys. of Higher Ed.,* 898 A.2d 1145 (Pa. Ct. Commw. 2006) .... 13

*Alexander v. Sandoval,* 532 U.S. 278 (2001) ...................................... 20

*Am. Bankers Ins. Co. of Florida v. Wells,* 819 So.2d 1196 (Miss. 2001) ..................... 15

*Andrews,* 78 B.R. 78 (Bankr. E.D. Pa. 1987) ...................................... 13

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ............................................. 7

*Beach v. Ocwen Fed. Bank,* 523 U.S. 410 (1998) ............................... 17

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ........................... 7

*Bermudez v. First of Am. Bank Champion, N.A.,* 860 F. Supp. 580 (N.D. Ill. 1994) ........... 20, 21

*Breauxsaus,* 304 B.R. 273 (Bankr. N.D. Miss. 2003) .......................... 16

*Custer v. Homeside Lending,* 858 So. 2d 233 (Ala. 2003) .................... 16

*Davis v. Allstate Ins. Co.,* 2009 WL 122761 (E.D. La. 2009) ............... 10

*Demando v. Morris,* 206 F.3d 1300 (9th Cir. 2000) ............................ 17

*Donahue v. Fed. Exp. Corp.,* 753 A.2d 238 (Pa. Super. Ct. 2000) ........ 14

*Farina v. Nokia,* 578 F. Supp. 2d 740 (E.D. Pa. 2008) .................... 13, 14

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009) ..................... 7

*General Elec. Capital Corp. v. Cohen*, 1991 WL 157297 (E.D. Pa. Aug. 9, 1991) .............. 13

*Girard Trust Co. v. City of Philadelphia*, 87 A.2d 277 (Pa. 1952) ............................ 16

*Haines v. State Auto Prop. and Cas. Ins. Co.*, 2010 WL 1257982 (E.D. Pa. Mar. 25, 2010) ........................................................................................ 13

*Hayes v. Wells Fargo Home Mort.*, 2006 WL 3193743 (E.D. La. Oct. 31, 2006) .............. 16

*Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010) .... 15, 16, 18, 20

*Howard Sav. Bank v. Cohen*, 607 A.2d 1077 (Pa. Super. Ct. 1992) ........................ 13

*Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75 (9th Cir. 1996) ................................ 17

*Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ............................. 10

*McAdams v. CitiFinancial Mort. Co. of New York, Inc.*, 2008 WL 577559 (M.D. La. Mar. 3, 2008) ...................................................................................... 17

*Motley v. Homecomings Financial, LLC*, 557 F. Supp. 2d 1005 (D. Minn. 2008) ........... 20

*New Castle Cty. v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338 (3d Cir.1999) ................. 9

*Norris v. Union Planters Bank*, 739 So. 2d 869 (La. Ct. App. 1999) ...................... 15

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ............................. 7

*Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir.1998) ........................ 18

*Raneri v. Inn Am. of Pennsylvania, Inc.* 29 Pa. D. & C.3d 239 (Pa. Ct. Com. Pl. 1984) .... 13, 16

*Rossman v. Fleet Bank, N.A.*, 280 F.3d 384 (3d Cir. 2002) .............................. 17, 18

*Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415 (3d Cir. 1999) ......... 11, 12

*Smith*, 866 F.2d at 584; *see also CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. Ct. 1999) ........................................................................ 14

*Somers v. Somers*, 613 A.2d 1211 (Pa. Super. Ct. 1992) ............................... 14

*Temple Univ. Hosp., Inc. v. Group Health, Inc.*, 2006 WL 146426 (E.D. Pa. Jan. 12, 2006) ...................................................................................... 14

*Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226 (N.D. Ill. 1995) .............. 19, 20, 21

*Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740 (N.D. Ind. Mar. 16, 2006) ......... 20

*Western Pennsylvania Nat. Bank v. Peoples Union Trust & Co.*, 266 A.2d 773 (Pa. 1970) ..... 13

*Williams v. Bill Watson Ford, Inc.*, 423 F. Supp. 2d  345 (E.D. La. 1976) ................ 20

## OTHER SECONDARY SOURCES

http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/environment/review /qa/floodinsurance .................................................................... 10

http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm ................. 4, 8

## <u>INTRODUCTION</u>

This Court should reject Bank of America's request for a second bite at the apple on its motion to dismiss.  The Magistrate's Report and Recommendation was thorough, even-handed, and well reasoned, and Bank of America has no legitimate basis for objecting to it.

The Magistrate correctly determined that Plaintiff stated a valid claim that Bank of America breached the terms of his mortgage contract, by demanding and force-placing flood insurance in excess of his principal balance.  This construction is consistent with the plain language of the mortgage (which adopted HUD's principal balance coverage requirement), the other documents that Plaintiff signed at closing, and the course of dealing between the parties.  Although Bank of America advances a different contract interpretation, its own interpretation is supported by nothing but legal argument, and should be rejected.  To hold otherwise would render the flood insurance language of Plaintiff's mortgage contract superfluous, confuse general hazard insurance with flood insurance, and violate several fundamental canons of contract interpretation (e.g., specific contract provisions control over general provisions, ambiguities must be resolved against the drafter, mortgage contracts must be strictly construed, and documents must be construed in favor of the non-moving party on a motion to dismiss).

The Magistrate also correctly ruled that Plaintiff stated a valid claim under the Truth-in-Lending Act ("TILA"). By misrepresenting the amount of flood insurance that Plaintiff was required to maintain on the property, and by taking action inconsistent with the mortgage contract and Truth-in-Lending Disclosure Statement that Plaintiff signed at closing, Bank of America violated TILA's fundamental mandate that lenders shall communicate truthfully with borrowers concerning the legal obligation between the parties.  In fact, numerous courts specifically have held that a bank subjects itself to TILA liability by force-placing unauthorized insurance, including flood insurance, on a borrower's property.  Conspicuously, Bank of

America fails to cite any contrary case law involving ***unauthorized*** flood insurance. Accordingly, Plaintiff respectfully requests that this Court accept the Magistrate's Report and Recommendation, and allow the parties to proceed with discovery without further delay.[1]

## BACKGROUND

### I.     Procedural Background

Pastor Richard Wulf ("Plaintiff") filed this putative class action lawsuit against Defendants Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC") (collectively, "Bank of America") on October 1, 2010.  *ECF No. 1.*  On December 3, 2010, Bank of America filed a motion to dismiss Plaintiff's Complaint (*ECF No. 13*), and the motion was referred to The Honorable Elizabeth T. Hey for a Report and Recommendation (*ECF No. 18*). Following briefing on the motion, Magistrate Judge Hey issued a detailed, 28-page Report and Recommendation on April 15, 2011, ruling that Plaintiff stated valid TILA and contract-based claims,[2] but dismissed his fraud and Pennsylvania Consumer Protection Law ("PA-CPL") claims under the "economic loss" doctrine.  *ECF No. 29.*  Plaintiff does not challenge the Magistrate's ruling, and has voluntarily withdrawn his fraud and PA-CPL claims in his proposed First Amended Complaint.  *See ECF No. 30.*  However, Bank of America objects that Plaintiff's TILA and contract-based claims also should be dismissed, even though it previously sought dismissal of the fraud and PA-CPL claims on the ground that Plaintiff has an adequate remedy in contract. *ECF No. 13-2 at 11.*

---

[1] At the Court's direction, discovery was stayed while Bank of America's motion to dismiss was pending.
[2] Magistrate Judge Hey ruled that Wulf's breach of contract and covenant of good faith and fair dealing claims should be consolidated into a single claim.  *ECF No. 29 at 13.*

## II.     Factual Background

Bank of America omits to include a summary of the pertinent factual allegations in its Objections.  While Bank of America may wish to gloss over those allegations, the Court cannot. Accordingly, Plaintiff provides the following factual background.

### A.     Flood Insurance Requirements Upon Loan Origination

On July 28, 2009, Plaintiff obtained a mortgage loan in the amount of $108,007 from Fulton Bank.  *Complaint, ¶ 11.*[3]  Because Plaintiff's home is located in a Special Flood Hazard Area ("SFHA"), federal law requires flood insurance for his property as a condition of this loan. *Id., ¶ 12; see also* 12 C.F.R. § 22.3 ("A bank shall not make, increase, extend, or renew any designated loan unless the building . . . securing the loan is covered by flood insurance for the term of the loan.")  However, federal law does ***not*** require flood insurance in excess of the outstanding principal balance of the loan.  *Id., ¶ 19(b); see also* 12 C.F.R. § 22.3 ("The amount of insurance must be at least equal to ***the lesser*** of the ***outstanding principal balance*** of the designated loan or the maximum limit of coverage available for the particular type of property under the Act.") (emphasis added).[4]

None of the loan and mortgage documents that Plaintiff signed at closing require him to carry greater flood insurance coverage.  *Complaint, ¶ 19(a).*  First, according to the terms of Plaintiff's mortgage, he is required to insure the property "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD").  *Id., ¶ 14.*  HUD does not require flood insurance in excess of a borrower's principal balance.  *Id., ¶ 19(c).*  To the contrary, HUD provides the following guidance to borrowers:

---

[3] All references to the "Complaint" are to Plaintiff's original Complaint (ECF No. 1).
[4] Bank of America does not dispute that federal law only requires Plaintiff to maintain flood insurance in the amount of his principal balance.

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

*Id.*, *¶ 14* (*citing* http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm);

*accord*, 24 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . . in an amount at least

equal to . . . the outstanding balance of the mortgage").

Second, Plaintiff signed a separate Flood Insurance Notice that also addressed the amount

of flood insurance that he was required to maintain. *Id., ¶ 12; see also ECF No. 24-1.* This

Flood Insurance Notice provided that the "flood insurance purchased must cover the **lowest of**:

(1) the **outstanding principal balance** of the loan(s); or (2) the maximum amount of coverage

allowed for the type of building under the NFIP [$250,000.00]; or (3) the full replacement cost

value (RCV) of the building and/or contents securing the loan." *Id., ¶ 13* (emphasis added).

Finally, Plaintiff signed a Truth-in-Lending Disclosure Statement that addressed the

lender's hazard insurance requirements. *ECF No. 13-4.* To the extent that hazard insurance

requirements have any relevance to the present dispute (as Bank of America contends in its

Objections), this Disclosure Statement provided: "Property hazard insurance in the amount of

$108,007.00 . . . is a required condition of this loan." *Id.*

In accordance with federal requirements and the loan and mortgage documents that he

signed at closing, Plaintiff obtained flood insurance coverage in the amount of $110,000

(approximately the same amount as his principal balance) upon origination of his mortgage.

*Complaint, ¶ 16.* This amount of coverage was deemed adequate by Fulton Bank, and it set up

an escrow account to pay the premiums for this coverage. *Id.*

4

**B.      Bank of America Falsely Claims that Plaintiff's Flood Insurance Is "Not Adequate" Ten Months After Acquiring the Mortgage**

Bank of America acquired Plaintiff's mortgage from Fulton Bank in September 2009. *Complaint, ¶ 16.* For ten months – from September 2009 through June 2010 – Bank of America accepted Plaintiff's mortgage payments (including his escrow payments) and did not question the amount of flood insurance coverage that he maintained on the property. *Id., ¶ 19(e).* However, on July 29, 2010, Bank of America suddenly sent Plaintiff a Demand for Increased Flood Coverage, claiming that his flood insurance coverage was "not adequate" under federal law and/or his mortgage agreement, and further stating that he was required to increase his flood insurance coverage by $103,703 (from $110,000 to more than $213,000). *Id., ¶ 17; see also Plaintiff ECF No. 24-2.* This Demand for Increased Flood Coverage also stated:

> To maintain acceptable insurance, we require that you maintain flood insurance coverage in an amount at least equal to the lesser of: (1) the maximum insurance available under the NFIP for participating communities, which is currently $250,000; or (2) the replacement value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property).

*Id.*

Bank of America's Demand for Increased Flood Coverage was inconsistent with the mortgage documents that Plaintiff signed at closing, and conspicuously omitted to allow Plaintiff (as previously agreed) to insure the property to the "outstanding principal balance of the loan." *Complaint, ¶ 17.* Similarly, it deceptively suggested that Plaintiff's flood insurance coverage was "not adequate" under federal law, even though federal law expressly allows borrowers to carry flood insurance on their property in the amount of their outstanding principal balance. *Id.; see also* 42 U.S.C. § 4012a(b)(1); 12 C.F.R. § 22.3. Notably, Bank of America did not explain why the amount of flood insurance that Plaintiff previously had carried was no longer adequate under federal law and/or the mortgage agreement. *Complaint, ¶ 17.*

5

Bank of America further informed Plaintiff that if he did not obtain the additional coverage that it demanded by September 16, 2010, (1) BAC would purchase such additional coverage for him "through agencies that are affiliates of Bank of America, N.A."; (2) "Bank of America, N.A. and its affiliates may receive a commission or other compensation in connection with obtaining this coverage"; and (3) the "premium may be more expensive and will likely provide less coverage" than insurance he could obtain by himself. *Id., ¶ 20.* In addition, Bank of America suggested that Plaintiff contact its affiliate, Banc of America Insurance Services, Inc., to purchase the additional insurance and avoid having the insurance force placed upon him. *Id.*

### C.   Bank of America Force-Places Unnecessary and Excessive Flood Insurance

After receiving Bank of America's Demand for Increased Flood Coverage, Plaintiff promptly increased his flood insurance coverage to the amount of his hazard insurance coverage on August 27, 2010, at an additional cost of $332 per year. *Id., ¶ 21.* Yet, on September 21, 2010, *after* Plaintiff already had obtained this increased flood insurance coverage, Bank of America sent him a "Notice of Force Placement," indicating that (1) BAC had purchased an additional $103,703 in flood insurance coverage for him anyway, and (2) "the cost of that policy will be charged to you and may become an additional debt secured by your mortgage or deed of trust and/or escrowed." *Id., ¶ 22.*

This Notice of Force Placement acknowledged that "[w]e understand that you do have some flood insurance on the Property," but claimed that "based on our records, it is not adequate." *Id.* Bank of America further claimed in the Notice of Force Placement that "The Lender-Placed additional insurance will protect our interest in the Property." *Id.* However, its interest in the property already was fully protected by Plaintiff's initial flood insurance policy and was more than protected by the additional coverage that Plaintiff had obtained. *Id.*

## STANDARD OF REVIEW

The Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, there is no reason to depart from the Magistrate's thoughtful Report and Recommendation here.

In order to state a claim, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, it is not necessary to plead "detailed factual allegations"; all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is not akin to a "probability requirement." *Id.* Rather, it merely requires enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating whether this standard has been met, the Court must construe the Complaint in the light most favorable to Plaintiff, accept all factual allegations as true, and draw all reasonable inferences in his favor. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Applying these principles, Plaintiff's Complaint "clearly satisfies this pleading standard, making a sufficient showing of enough factual matter (taken as true) to suggest the required elements of [Plaintiff's] claims." *Id.* at 235.[5]

---

[5] "Even post-*Twombley*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotation marks omitted); *see also Phillips*, 515 F.3d at 233.

## ARGUMENT

**I.     The Magistrate Correctly Ruled that Plaintiff Stated a Valid Contract Claim**

The Magistrate correctly ruled that Plaintiff stated a valid breach of contract claim against Bank of America, for requiring him to insure his property in excess of his principal balance.  As the Magistrate stated in her opinion, this conclusion is supported by "evaluation of the contract itself, the Disclosure Form[s] signed by Plaintiff, and the course of dealing between the parties to the mortgage contract[.]"  *ECF No. 29 at 8.*

**A.     The Magistrate's Ruling Is Consistent with the Flood Insurance Provision in the Mortgage**

The **only** reference to flood insurance that appears anywhere in Plaintiff's mortgage is the following sentence, which incorporates HUD's flood insurance requirements into the mortgage:

> Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary [of HUD].

*Complaint, ¶ 13; see also ECF No. 13-3 at ¶ 4.*  Conspicuously, Bank of America almost entirely ignores HUD's flood insurance requirements in its Objections.  *See Objections at 7 n.4* (burying HUD regulations in a footnote).  This is because HUD's regulations do not require flood insurance in excess of a borrower's principal balance.  *See* 24 C.F.R. § 203.16a(c) ("[F]lood insurance must be maintained . . . in an amount at least equal to either **the outstanding balance of the mortgage**, less estimated land costs, or the maximum amount of the NFIP insurance available with respect to the property improvements, **whichever is less**.") (emphasis added).  In fact, HUD explicitly states on its website that "[f]or loans . . . , the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan. *Complaint, ¶ 14* (*citing* www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm).

Although Bank of America argued, in its motion to dismiss, that HUD's regulations "permit" banks to demand flood insurance in excess of a borrower's principal balance (*ECF 13-2 at 7*), this argument misses the point.  The relevant question is not what HUD's regulations "permit," but what they "require," because Plaintiff only was obligated insure the property "against loss by floods to the extent ***required***" by HUD.  *Complaint, ¶ 13 (emphasis added).*  It is therefore clear, based on the plain language of the mortgage contract, that Plaintiff was not required to carry flood insurance in excess of his principal balance.

**B.**    **The *Hazard* Insurance Provision in the Mortgage Does Not Apply to *Flood* Insurance**

Instead of focusing on the flood insurance provision in the mortgage, Bank of America relies on a separate provision relating to ***hazard*** insurance:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires.

*Defs' Objections at 4-5* (*citing Docket 13-3 at ¶ 4*) (emphasis omitted).  As the Magistrate properly determined, "[i]t is far from clear that this [provision] refers to flood insurance."  *ECF No. 29 at 8*.  In fact, there would have been no need to include a separate flood insurance provision in the mortgage if the hazard insurance provision already addressed the amount of flood insurance that was required.  *See New Castle Cty. v. Nat'l Union Fire Ins. Co.,* 174 F.3d 338, 349 (3d Cir.1999) ("[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language.").

General hazard insurance (also known as homeowner's insurance) is different from flood insurance, and covers different types of losses (e.g., losses due to fire or wind damage).  As HUD explains on the same section of its website that addresses flood insurance requirements:

> **Question**:
> Doesn't the homeowner property casualty insurance cover financial loss due to flooding damage?
>
> **Answer**:
> Generally, homeowner and other property casualty insurance policies do not provide coverage for potential financial loss that may be caused by flooding damage.

http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/environment/review/qa/floodinsurance (last visited May 15, 2011).  Several cases further underscore this distinction between general hazard insurance and flood insurance.  *See e.g., Davis v. Allstate Ins. Co.*, 2009 WL 122761, at *2 (E.D. La. Jan. 15, 2009) ("There is no dispute that damage from flood is excluded under the homeowner's policy. Because there is no coverage for damage from flood under the homeowner's policy, both policies of insurance do not cover the same loss."); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 220-21 (5th Cir. 2007).  Indeed, the very fact that flood losses are not covered by standard hazard insurance policies is what caused the federal government to establish a separate National Flood Insurance Program.  Accordingly, the hazard insurance provision in the mortgage has no bearing on the amount of flood insurance that is required.

> **C.** **Even if the Hazard Insurance Provision Applies, the Amount of Coverage Required under the Hazard Insurance Provision Is No Greater than the Amount of Coverage Required under the Flood Insurance Provision**

Even if this Court were to consider the vague language of the hazard insurance provision ("in the amounts and for the periods that Lender requires"), this provision still would not justify Bank of America's conduct, since the amount of insurance "that lender require[d]" was no greater than the amount of insurance that HUD required.  This is clear from (1) the Truth-in-Lending Disclosure Statement that Plaintiff signed at closing; (2) the Flood Insurance Notice that Plaintiff signed at closing; and (3) the course of dealing between the parties.

Plaintiff's Truth-in-Lending Disclosure Statement specifically addressed the amount of hazard insurance that was required, as follows:

> Property hazard insurance in the amount of $108,007.00 with a mortgagee clause to the lender is a required condition of this loan.  Borrower may purchase this insurance from any insurance company acceptable to the lender.

*ECF No. 13-4 at 1.*  The Magistrate correctly found that this Truth-in Lending Disclosure Statement further supports Plaintiff's claim that he is not required to carry insurance in excess of his principal balance ($108,007 at origination).  *ECF No. 29 at 8-9.*  Although Bank of America suggests that it was "legal error" for the Magistrate to consider this Truth-in-Lending Disclosure Statement (*see Defs' Objections at 8*), this argument is disingenuous – for two reasons.  First, Bank of America can hardly fault the Magistrate for considering documentation that Bank of America itself submitted in support of its motion.  Second, Bank of America is trying to have it both ways.  Bank of America cannot contend that hazard insurance requirements encompass flood insurance, while simultaneously contending that the Court should disregard the specific hazard insurance requirement set forth in the Truth-in-Lending Disclosure Statement.

The separate Flood Insurance Notice that Plaintiff signed at closing also did not require flood insurance in excess of his principal balance.  Consistent with HUD's regulations, the Flood Insurance Notice provided that the amount of "flood insurance purchased must cover the ***lowest of***: (1) the ***outstanding principal balance of the loan(s)***; or (2) the maximum amount of coverage allowed for the type of building under the NFIP [$250,000.00]; or (3) the full replacement cost value (RCV) of the building and/or contents securing the loan." *Complaint, ¶ 13* (emphasis added); *see also ECF No. 24-2.*  This Flood Insurance Notice also bears upon the interpretation of the mortgage agreement because it was made part of the documents that Plaintiff signed at closing.  *See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415,

421 (3d Cir. 1999) ("Under Pennsylvania law, when two or more writings are executed at the same time and involve the same transaction, they should be construed as a whole.") (internal quotation marks omitted).

Finally, it is clear from the parties' course of conduct (both at and after closing) that flood insurance is not required in excess of Plaintiff's principal balance.  At the time Plaintiff originated his mortgage, he obtained flood insurance coverage in the amount of $110,000, approximately the same amount as his outstanding principal balance.  His lender at that time (Fulton Bank) regarded this amount of coverage as sufficient, and set up Plaintiff's escrow account accordingly.  When Bank of America later acquired Plaintiff's mortgage, it was aware (or should have been aware) of the amount of flood insurance that Fulton Bank required as lender, and gave no indication at that time that the existing amount of flood insurance was inadequate.  Moreover, Bank of America held and serviced Plaintiff's mortgage for almost a year before determining that he needed to increase his level of flood insurance coverage.  This course of conduct further demonstrates that Plaintiff's existing level of coverage was sufficient to satisfy the requirements of his mortgage.

### D. To the Extent that the Hazard Insurance Provision Applies to Flood Insurance and Requires More Coverage than the Flood Insurance Provision, the "Conflict" Must Be Resolved in Favor of Plaintiff

Even if the Court were to find that the hazard insurance provision applies to flood insurance and requires more flood insurance than necessary to cover Plaintiff's principal balance (neither of which are true), the Court still would have to make a third leap before granting Bank of America's Motion to Dismiss.  Specifically, the Court would have to find that any "conflict" between the flood insurance provision and the hazard insurance provision must be resolved in

favor of Bank of America as a matter of law.  This would violate at least four fundamental principles of contract construction.

First, "[i]t is a basic rule of contract construction that when there is a conflict between a specific provision and a general provision, the specific contract provision prevails."  *Haines v. State Auto Prop. & Cas. Ins. Co.*, 2010 WL 1257982, at *5 (E.D. Pa. Mar. 25, 2010) (citing *A.G. Cullen Const., Inc. v. State Sys. of Higher Ed.,* 898 A.2d 1145, 1169 (Pa. Ct. Commw. 2006)). Here, the flood insurance provision is more specific to the parties' flood insurance dispute than the general hazard insurance provision.  Therefore, the flood insurance provision prevails.

Second, mortgage contracts are formal documents of a particular character that must be "strictly construed."  *Western Pennsylvania Nat. Bank v. Peoples Union Trust & Co.*, 266 A.2d 773, 775 (Pa. 1970); *Raneri v. Inn Am. of Pennsylvania, Inc.* 29 Pa. D. & C.3d 239, 241 (Pa. Ct. Com. Pl. 1984).  Accordingly, Bank of America is limited to those rights that are ***specifically*** granted to it in the mortgage contract.  *See Western Pennsylvania Nat'l Bank*, 266 A.2d at 775.

Third, "if the language of the contract is ambiguous and unclear, a written agreement is to be construed against its drafter, which in this case is the bank."  *Howard Sav. Bank v. Cohen*, 607 A.2d 1077, 1081 (Pa. Super. Ct. 1992).  This principle applies with equal force to assignees under a mortgage contract.  *See In re Andrews*, 78 B.R. 78, 81 (Bankr. E.D. Pa. 1987) ("Since the Mortgagee, as an assignee, steps into the shoes of Forbes Mortgage Co., the drafter of the adhesion contract, the admitted ambiguity in the foregoing passages must be construed against the Mortgagee.").

Finally, on a dispositive motion, "[a]ll reasonable inferences from the documents of record must be drawn in favor of the nonmoving party[.]"  *Gen. Elec. Capital Corp. v. Cohen*, 1991 WL 157297, at *1 (E.D. Pa. Aug. 9, 1991); *accord, Farina v. Nokia*, 578 F. Supp. 2d 740,

749 (E.D. Pa. 2008).   Therefore, it would be especially inappropriate, at this early stage, to resolve the language of the mortgage contract in favor of Bank of America (the moving party).

> **E.   Even Standing Alone, the Hazard Insurance Provision Does Not Allow Bank of America to Impose Unfair Flood Insurance Requirements on Borrowers**

Finally, even if this Court were to completely disregard the language of the flood insurance provision and exclusively consider the language of the hazard insurance provision (which would be a clear error of law), the hazard insurance provision is not a blank check that authorizes Bank of America to demand excessive amounts of flood insurance.   As the Magistrate recognized in her Report and Recommendation, any discretionary authority granted to the lender by this provision is subject to an implied duty of good faith and fair dealing.   *See ECF No. 29 at 12-13.*[6]

Although Bank of America previously argued that the duty of good faith and fair dealing does not apply to the lender-borrower relationship, the Third Circuit has held otherwise:

> A borrower of money, especially the owner of a residential property mortgaged to a lending institution, may reasonably expect that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken by the lender.

*In re Smith*, 866 F.2d at 584; *see also CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. Ct. 1999) (declining to dismiss good faith and fair dealing claim against bank where bank's actions were inconsistent with parties' prior course of dealing).   In fact, the Third Circuit

---

[6] "Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement."   *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000); *see also Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992).   Examples of bad faith that violate this duty include "evasion of the spirit of the bargain, . . . *abuse of a power to specify terms*, and interference with or failure to cooperate in the other party's performance."   *Temple Univ. Hosp., Inc. v. Group Health, Inc.*, 2006 WL 146426, at *5 (E.D. Pa. Jan. 12, 2006) (emphasis added) (*quoting Somers*, 613 A.2d at 1213).   In particular, "[u]ndisclosed, inflated charges . . . may be an abuse of a power to specify terms."   *Id.* (internal quotation marks omitted).

has specifically held that "imposing additional and unnecessary costs and expenses" on a borrower is an "unfair practice" that violates this duty. *In re Smith*, 866 F.2d at 584-585.

Bank of America breached its duty of good faith and fair dealing by purchasing more flood insurance than was necessary to protect its financial interest in the property and comply with federal law. *See, e.g., Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116, 1129-30 (N.D. Cal. 2010) ("*Hofstetter II*") (plaintiff stated valid claim that Chase engaged in unfair business practices by force-placing flood insurance in excess of plaintiff's credit line and federal requirements). In *Hofstetter II*, the court interpreted a mortgage agreement that contained a single insurance provision that expressly applied to **both** flood insurance and hazard insurance. *Id.* at 1127. Similar to the hazard-only provision in this case, the relevant insurance provision in *Hofstetter II* also contained vague language providing that insurance "shall be maintained in the amounts and for the periods that we require." *Id.* However, the Court held that this language did not afford Chase the right to increase its borrowers' flood insurance requirements after-the-fact and demand more coverage than was necessary to protect its interests. *Id.* at 1127.[7]

The Magistrate correctly determined that *Hofstetter II* favors Plaintiff's reading of the contract to "set a limit on the flood insurance a lender may require." *ECF No. 29 at 11 n.6.* Numerous other courts have reached similar results. *See Norris v. Union Planters Bank*, 739 So. 2d 869, 873-74 (La. Ct. App. 1999) (bank may not force-place flood insurance in excess of borrower's principal balance); *Am. Bankers Ins. Co. of Florida v. Wells*, 819 So. 2d 1196, 1204 (Miss. 2001) (plaintiff stated valid claim against lender for breach of duty of good faith and fair dealing, where lender charged customers hazard insurance premiums "based upon the gross

---

[7] According to the court, if Chase wanted to reserve its right to change its flood insurance requirements at a later date, it was obligated to put the borrower on notice of specific events that might trigger a change, and specifically advise the borrower how much flood insurance would be required in the event of such a change. *Id.*

amount of the loan . . . as opposed to the net payoff of the loan on the date of force-placement");

*In re Breauxsaus*, 304 B.R. 273, 281 (Bankr. N.D. Miss. 2003) (holding, in the context of credit

life insurance, that selling level coverage on decreasing loans is onerous, deceptive, and profits

the seller to the detriment of the borrower.").[8]   Moreover, Pennsylvania law is consistent with

this reasoning:

> Pennsylvania law has long held that a mortgage is merely collateral for the
> payment of some primary obligation, usually a bond. *Girard Trust Co. v. City of
> Philadelphia*, 369 Pa. 499, 87 A.2d 277 (1952). Further, an express covenant in a
> mortgage is merely ancillary to and in support of that primary obligation and its
> function is to furnish collateral security for the performance of the terms of that
> obligation. *Girard*, *supra*, 369 Pa. at 503. Therefore, the covenant contained in
> the mortgage . . . is merely to furnish collateral security for the performance of the
> underlying debt and has no independent existence apart from being collateral for
> the underlying debt.

*Raneri*, 29 Pa. D. & C.3d at 240-41.  For this reason as well, Plaintiff's contract claims should be

allowed to proceed.

## II.      Plaintiff Has Stated a Valid TILA Claim Against Bank of America

The Magistrate also correctly ruled that Plaintiff stated a valid TILA claim against Bank

of America.  All of the documents that Plaintiff signed at closing – the mortgage contract, the

Flood Insurance Notice, and the Truth-in-Lending Disclosure Statement itself – indicated that

Plaintiff only was required to maintain insurance in the amount of his principal balance.  Given

this fact, Bank of America was not free to send him misleading notices claiming that his existing

---

[8] The case law cited by Bank of America is not controlling and is distinguishable.  *See Defs'
Objections at 5, 8* (citing *Custer v. Homeside Lending*, 858 So. 2d 233 (Ala. 2003); *Hayes v.
Wells Fargo Home Mortg.*, 2006 WL 3193743 (E.D. La. Oct. 31, 2006)).  Neither *Hayes* nor
*Custer* involved situations where there was a separate flood insurance provision in the mortgage
that adopted HUD's flood insurance requirements.  Moreover, the mortgage agreement in *Hayes*
specifically stated that "[w]hat Lender requires . . .  can change during the term of the Loan."
*Hayes*, 2006 WL 3193743, at *2.  Plaintiff's mortgage contains no such language.  *See ECF No.
13-3.*  Therefore, the Magistrate appropriately concluded that *Hayes* is distinguishable.  *See ECF
No. 29 at 11 n.7*; *accord Hofstetter II*, 751 F. Supp. 2d at 1127 (noting that Chase failed to
reserve the right to change its flood insurance requirements in its deed of trust with borrower).

level of insurance coverage was "not adequate." *See McAdams v. CitiFinancial Mort. Co. of New York, Inc.*, 2008 WL 577559, at *6 (M.D. La. Mar. 3, 2008) ("Truth in Lending documents would be rendered meaningless if, after acquiring the borrower's signature on a promissory note, lenders were absolutely free to unilaterally deviate from the document's provisions."). To the extent that Bank of America wanted to amend the terms of Plaintiff's existing mortgage contract and deviate from the Truth-in-Lending Disclosure Statement, it was obligated to enter into a new transaction, with a new set of disclosures, and obtain Plaintiff's consent to the new terms.

A.     **Bank of America Violated the TILA by Misrepresenting the Terms of the Legal Obligation Between the Parties**

The most fundamental requirement of the Truth-in-Lending Act – as the name of the Act implies – is to provide borrowers with clear and accurate disclosures of loan terms. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see also Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002) ("TILA prohibits not only failures to disclose, but false or misleading disclosures"); 12 C.F.R. § 226.17(c)(1) ("The disclosures shall reflect the terms of the legal obligation between the parties."). This duty to make truthful and accurate disclosures is an ongoing duty, and applies to ***both*** subsequent disclosures and initial disclosures at the time of the transaction. *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting defendant's argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the transaction"). Thus, where a creditor sends out notices, after the date of the transaction, which misstate the borrower's obligations, such notices give rise to liability under the TILA. *See Hubbard*, 91 F.3d at 79 (defendant's "payment adjustment notices were required to reflect the loan agreement"); *Demando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) ("Because the Notice contained terms that were in violation of the credit agreement, the Notice violated Regulation Z.").

17

Here, Bank of America violated the TILA because its notice letters deviated from the language of Plaintiff's mortgage (as well as the other documents he signed at closing), and failed to provide him the option to maintain flood insurance in the amount of his outstanding principal balance. *Complaint, ¶ 19.* As the Magistrate recognized, this fact scenario is almost identical to the one presented in *Hofstetter II. See ECF No. 29 at 21-22* (discussing *Hofstetter II*).  In that case, the bank and its servicer initially allowed one of the named plaintiffs to carry flood insurance in the amount of his credit line ($100,000), but later attempted to deviate from the terms of his home equity credit plan by claiming that he was required to increase his coverage to the NFIP limit ($250,000).  *Hofstetter II*, 751 F. Supp. 2d at 1129-30.  The court held that "[b]y making this move, defendants exposed themselves to both the requirements of the TILA and applicable state laws." *Id.* at 1130.

The same reasoning applies here.  Although *Hofstetter II* dealt with an open-ended credit plan, the duty to accurately disclose the terms of the legal obligation between the parties applies to both open-ended and closed-ended credit plans.  *Cf.* 12 C.F.R. § 226.5(c) (open-ended credit plans) *with* 12 C.F.R. § 226.17(c) (closed-ended credit).  Indeed, the very nature of a closed-ended loan is that its terms are ***not*** subject to change.  Accordingly, Bank of America had no right to demand and force-place more flood insurance than was authorized under the mortgage contract, and its actions are not exempt from liability under the TILA.[9]  One of the central purposes of the TILA is to "protect the consumer against inaccurate and unfair credit billing" practices.  15 U.S.C. § 1601(a).

---

[9] TILA is a remedial consumer protection statute that "should be construed liberally in favor of the consumer."  *Rossman*, 280 F.3d at 393 (3d Cir. 2002) (quoting *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3d Cir.1998)).

Notably, Bank of America does not defend its conduct under 12 C.F.R. § 226.17(e), which shields a creditor from TILA liability "when the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it[.]" 12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1. This is because TILA does *not* shield a creditor from liability where the consumer has lived up to his prior commitments, and the creditor force-places or attempts to force-place additional insurance coverage that was never authorized in the underlying agreement:

> Although not entirely clear, Defendant appears to suggest that even if its initial disclosure became inaccurate because of its own action (the procurement of unauthorized insurance and charging it to Plaintiffs' account), § 226.17(e) nevertheless dictates that the disclosure is not a violation of the regulation. Again, the court disagrees. The nature of the example given in the Staff Commentary to § 226.17(e)--a failure by the *consumer* to fulfill a prior commitment--suggests that the immunity for inaccuracies caused by subsequent events is not to be afforded to the creditor when the creditor causes the events that result in the inaccuracies. Applying § 226.17(e) where the subsequent inaccuracy was caused by the creditor would transform TILA, the purpose of which is to *advance* the informed use of credit on the part of the consumer, see 15 USC § 1601(a), into a potential vehicle for fraud by creditors. Considering the fact that TILA is to be interpreted liberally to achieve its purpose, the court concludes that Defendant's interpretation of § 226.17(e) cannot be right.

*Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226, 1230 (N.D. Ill. 1995) (emphasis in original).

### B.   Bank of America Violated the TILA by Failing to Provide Plaintiff with New Credit Disclosures

In addition to misrepresenting Plaintiff's flood insurance obligations, Bank of America also violated TILA by failing to supplement its credit disclosures to account for the new flood insurance coverage levels that it demanded and force-placed. *See* 12 C.F.R. pt. 226, Supp. I, § 17(c), cmt. 2 (any modification that "rises to the level of a change in the terms of the legal obligation" should be "reflected in the disclosures" and agreed-upon by the parties). By demanding and ultimately purchasing flood insurance coverage than was not authorized as part of the original loan transaction, Bank of America entered into a separate transaction that

triggered a new set of disclosures. *See Travis*, 880 F. Supp. at 1229-30 ("Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" that "required new disclosures" under 12 C.F.R. § 226.18); *Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740, at *5 (N.D. Ind. Mar. 16, 2006) ("Wells Fargo's actions in force-placing insurance on Plaintiffs' account may have triggered new disclosures under section 226.18 of Regulation Z."); *accord*, *Motley v. Homecomings Financial, LLC*, 557 F. Supp. 2d 1005, 1009 & n.3 (D. Minn. 2008).[10] The Magistrate appropriately considered this case law, and followed it. *See ECF No. 29 at 22-23.* Notably, Bank of America did not cite any contrary authority in its motion papers or its objections that would indicate that force-placement of **unauthorized** insurance is lawful under the TILA.[11]

Although Bank of America argues that insurance premiums are not considered "finance charges" that must be disclosed as part of the loan transaction if the borrower is free to select the insurance carrier (*Defs' Objections at 9*), this argument falls short, for several reasons. First, this argument has no application where the insurance premiums charged to the borrower were not authorized as part of the underlying loan transaction. *See Hofstetter II*, 751 F. Supp. 2d at 1128 (unauthorized "property insurance coverage written in connection with a loan triggers mandatory 'finance charge' disclosures"); *Bermudez v. First of Am. Bank Champion, N.A.*, 860 F. Supp.

---

[10] Even where the force-placement of insurance is authorized – which it was not here – "[t]he creditor may ... be required to make new disclosures." 12 C.F.R. pt. 226, Supp. I, § 17(e), cmt. 1.

[11] The cases cited by Defendants have no bearing on the issues in this case. In *Alexander v. Sandoval*, 532 U.S. 278 (2001), the Court was not presented with a TILA claim. In *Williams v. Bill Watson Ford, Inc.*, 423 F. Supp. 345 (E.D. La. 1976), the plaintiff's TILA claim did not involve charges for unauthorized insurance or insurance of any kind. To the extent that *Williams* has any relevance at all, it actually supports Plaintiff's claims because the court held that certain unauthorized fees (notary charges and license, title, and registration fees) should have been included in the finance charge. *See id.* at 348.

580, 601 (N.D. Ill. 1994), *withdrawn pursuant to settlement*, 886 F.Supp. 643 (N.D. Ill. Mar 22,

1995) ("If a factfinder found such charges to be unauthorized, then it could also find that the

charging of plaintiffs' accounts for the cost of that insurance . . . [was] a finance charge.");

*Travis*, 880 F. Supp. at 1229-30 (premiums for unauthorized insurance constituted "finance

charges").   Second, as the Magistrate recognized, force-placed coverage is obtained through

affiliates of Bank of America, not insurance companies of the borrower's choice.  *See ECF No.

29 at 20.*  Finally, even if new finance charge disclosures were not required, Bank of America

still was required to amend its coverage requirement disclosures in the mortgage contract and

Truth-in-Lending Disclosure Statement, and obtain Plaintiff's consent to the new requirements.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court overrule

Defendants' objections and approve the Magistrate's Report and Recommendation.

Respectfully submitted,

Dated:  May 19, 2011                    NICHOLS KASTER, PLLP

/s/       Kai Richter
Paul J. Lukas, MN Bar No. 22084X*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
*Admitted Pro Hac Vice*

CONSOLE LAW OFFICES LLC
Laura C. Mattiacci, PA Bar No. 89643
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Telephone: (215) 545-7676
Fax (215) 545-8211

ATTORNEYS FOR PLAINTIFF

21

## CERTIFICATE OF SERVICE

I hereby certify that on **May 19, 2011**, I caused *Plaintiff's Response to Defendants' Objections to the Report and Recommendation of the United States Magistrate Judge* to be filed via CM/ECF, whereupon notification will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


/s/Kai H. Richter

Kai H. Richter